A91A1793. HAYNES v. McCAMBRY et al.
(416 SE2d 893)

BEASLEY, Judge.

Haynes sued McCambry and Doe to recover damages for injuries allegedly sustained when McCambry's car collided with the car he was driving. The complaint alleged that McCambry and Doe, an unknown driver of a third car, were jointly and severally negligent and liable for plaintiff's injuries. Haynes served the complaint on Aetna Casualty & Surety Company, the uninsured motorist carrier which covered the vehicle plaintiff was operating, in compliance with OCGA § 33-7-11 (d). Aetna defended in its own name. Haynes appeals the judgment and denial of his motion for new trial following a jury verdict in favor of both defendants.

As plaintiff was driving on a multi-lane interstate highway through downtown Atlanta in misty weather conditions, he observed what he described as a small, imported car "zigzagging" and traveling at a high rate of speed behind him. Plaintiff moved into the far left lane which was clear of traffic, while the unidentified (Doe) vehicle passed him in the second lane to the right. At about the same time, defendant McCambry, who was driving adjacent to plaintiff in the lane to his right, veered to the left and hit plaintiff's car in the area of the right fender. McCambry had observed the Doe car behind him exceeding the speed limit and zigzagging in and out of traffic for "at least five minutes."

After the collision, McCambry stated to plaintiff that the Doe vehicle had "cut in front of him," requiring him to "veer over into [plaintiff's] lane to avoid hitting [it]." McCambry testified that he had no time to brake or to signal, and had he not moved into plaintiff's lane, he would have had "an accident with this phantom vehicle and probably not with [plaintiff]."

Approximately two years after the accident, plaintiff underwent an anterior cervical diskectomy to correct a herniated disk, which injury he contends proximately resulted from the collision.

1. Plaintiff contends that the trial court erred in denying his motion for new trial on the general grounds.

"The appellate court will not disturb the trial court's refusal to grant a new trial if there is any evidence at all to support the verdict, however slight, and regardless of what may be the character of the witnesses. [Cit.] 'Our function is to review the sufficiency of the evidence, and not to determine its weight. Though the evidence might have authorized a different verdict . . . or the verdict is supported by only slight evidence . . . or the evidence is conflicting or preponderates against the verdict . . . where no material error of law appears, this court will not disturb the trial judge's judgment in overruling the motion for new trial.' [Cit.]" *McBowman v. Merry*, 104 Ga. App. 454, 455 (1) (122 SE2d 136) (1961).

"To state a cause of action for negligence in Georgia, the following elements are essential: '(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.' [Cit.]" *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982).

We assume for the purposes here, without deciding, that defendants, either jointly or severally, breached a legal duty of care to plaintiff as a matter of law. On the same basis, we also assume that claim-

ant fulfilled the requirements of OCGA § 33-7-11 (b) (2), with respect to the John Doe defendant, as a matter of law. Nevertheless, in the absence of a legal causal relationship between defendants' conduct and plaintiff's injuries, a compensable claim is not established.

" '(O)n appeal the evidence is to be construed to sustain rather than to destroy, the verdict, for every presumption and inference is in its favor. (Cit.)' [Cit.]" *DeKalb County Hosp. Auth. v. Theofanidis*, 157 Ga. App. 811 (1) (278 SE2d 712) (1981). The evidence viewed in such a light showed that plaintiff suffered no apparent injury after the impact with the McCambrys' car. He was able to drive Mr. and Mrs. McCambry to the body shop where their car had been towed, and he then returned to work for the remainder of the day. On the following day he presented at Northside Hospital with complaints of light-headedness and dizziness and was examined and released. Approximately one month later, he was seen by a neurologist with complaints of headaches and arm pain. His neurological examination at that time was normal as were the results of a CT scan and electromyelogram. The neurologist testified that plaintiff had no complaints of neck pain and exhibited no indication of a herniated disk or nerve root compression.

In October of 1987, plaintiff began receiving weekly chiropractic adjustments, which continued for approximately six months. He was also examined during that month by a second neurologist who prescribed magnetic resonance imaging testing, with negative results. Approximately one year later he was seen by a neurosurgeon. Tests conducted at this time revealed the presence of a small herniated disk. Corrective surgery was performed on March 16, 1989.

There were numerous conflicts in plaintiff's testimony. On deposition and in response to interrogatories, he denied having been involved in any other automobile accidents or experiencing neck or back problems prior to the present collision. His trial testimony revealed that he had sustained back injuries in an automobile accident in 1979. He had been involved in five other motor vehicle collisions from 1985 until the present one, including a rear-end incident 30 days following the collision with McCambry's car.

Although on deposition he denied having received chiropractic treatment prior to October 1987, he admitted at trial that he was treated by a chiropractor in January 1986 with complaints of numbness and pain in his neck and shoulder, sustained as a result of regular physical exercise. He also admitted failing to disclose to his treating physicians his involvement in the other collisions and injuries sustained therein.

The expert medical evidence disclosed the following. No diagnosis was made of a herniated disk until approximately 18 months after the incident, although numerous examinations and tests were con-

ducted during that time period. Upon giving his medical history, plaintiff specifically denied any pre-existing back and neck injuries. Although the neurosurgeon who performed the diskectomy was of the opinion that it would be reasonable to assume that the disk herniation resulted from the incident, he stated that, "I would have to use the patient's history to determine the onset of his problem," and there would be "no way of corroborating that" information. He further stated that the herniated disk could have occurred prior to or after the accident and that chiropractic manipulation can worsen a pre-existing cervical disk injury. It was further shown that plaintiff had been actively engaged in an intensive exercise program from 1985 through 1988 and that exercise could also exacerbate such a condition.

The neurologist who treated plaintiff during the four months following the collision testified there was no indication of a herniated disk or nerve root compression at that time. This physician's opinion was that the herniated disk diagnosed in 1988 was unlikely to have been related to an injury sustained in March of 1987. See Division 2, infra.

" 'On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. . . .' Prosser and Keaton on Torts (5th ed. 1984), § 41, p. 269." *Anneewakee, Inc. v. Hall*, 196 Ga. App. 365, 367 (396 SE2d 9) (1990).

The jury was authorized to conclude that plaintiff failed to establish a legal causal connection between defendants' conduct and his resulting injuries and that any damage he incurred did not result from the alleged breach of a legal duty owed him by defendants. *Bradley Center*, supra at 200.

2. Plaintiff contends that the court erred in refusing to allow the testimony of a vocational rehabilitation specialist for the purpose of assessing future employability. The witness' name had not been included in response to an interrogatory calling for the identification of each expert to be called as a witness at trial, nor did it appear on the pre-trial list of witnesses. The offer of proof shows that the witness would testify that plaintiff no longer had the physical stamina required of a car salesman (his occupation at the time of the collision) and that he would require additional training to acquire work at his former income level. If it was error to exclude the witness, see *Jordan v. Santa Fe Engineering*, 198 Ga. App. 600 (1) (402 SE2d 304) (1991), the testimony was merely cumulative of that of the other medical experts and of plaintiff himself. It would have added little to plaintiff's case. Its exclusion affords no basis for reversal. See generally *Klemme*

*Cattle Co. v. Westwind Cattle Co.*, 156 Ga. App. 353 (1) (274 SE2d 738) (1980).

3. Plaintiff contends that the trial court erred in overruling his objection to the form of a hypothetical question posed to a medical expert on deposition, which testimony was read at trial. The physician was asked whether he had "an opinion based upon a reasonable degree of medical certainty . . . as to whether or not the herniated disk discovered . . . in October of 1988 was absolutely related to the March 1987 accident or whether it could have arisen from some other cause or condition."

Plaintiff takes issue with the word *absolutely* as imposing an improper standard of causation. However, the deponent did not respond to the "absolute" language of the question, but instead stated his opinion that "the herniated disk found in 1988 is unlikely to be related to an injury [sustained in] April of 1987" and gave his basis for that opinion. No objection was made during the deposition to the form of the question or to the responsiveness of the answer, although any such alleged error could have been "obviated, removed, or cured if promptly presented. . . ." OCGA § 9-11-32 (d) (3) (B). Failure to so object constitutes a waiver. Id. Cf. *Bryant v. Food Giant, Inc.*, 184 Ga. App. 155 (1) (361 SE2d 38) (1987), where there was an agreement of the parties with respect to reservable objections.

4. Plaintiff challenges the giving of the following charge: "One who is confronted with a sudden emergency which is not created by his own fault and is without sufficient time to determine accurately and with certainty the best thing to be done, is not held to the same accuracy of judgment as would be required of him if he had more time for deliberation. The requirement of such a person is that he act with ordinary diligence under all peculiar facts and circumstances surrounding the situation."

Although McCambry had observed the Doe vehicle for several minutes before the collision, he testified that when that vehicle moved into his lane, "I had no time to blow my horn. I had no time to put on brakes. I had no time to signal. I came over because I thought I had space in front of Mr. Haynes to get over without causing an accident. If I had not done so, I would have [had] an accident with this phantom vehicle and not with Haynes." The present collision was one which "occur[red] immediately following the realization of the peril or crisis and before there [was] time for mature reflection." *Ford v. Pinckney*, 138 Ga. App. 714, 716 (3) (227 SE2d 430) (1976). A charge on sudden emergency was authorized. See *Sconyers v. Williams*, 198 Ga. App. 673 (3) (402 SE2d 775) (1991); *Wallace v. Ramey*, 191 Ga. App. 293 (381 SE2d 434) (1989); *Ray v. Anderson*, 189 Ga. App. 80 (2) (374 SE2d 819) (1988); *Howard v. Jones*, 187 Ga. App. 756 (2) (371 SE2d 196) (1988).

5. The failure to give plaintiff's request to charge as to consequential damages is at most harmless error where the jury returned a verdict in favor of the defendants. *Fulton Nat. Bank of Atlanta v. Marshall*, 245 Ga. 745, 747 (267 SE2d 225) (1980); *Big Bend Agri-Services v. Bank of Meigs*, 174 Ga. App. 493 (4) (330 SE2d 422) (1985).

*Judgment affirmed. Sognier, C. J., and Carley, P. J., concur.*

DECIDED MARCH 19, 1992.

*Goodman & Goodman, Michael D. Goodman, Barry Goodman*, for appellant.

*Cone & Shivers, Kenneth F. Dunham, Harper, Waldon & Craig, Russell D. Waldon*, for appellees.