A94A2385. NELSON et al. v. POLK COUNTY HISTORICAL SOCIETY, INC.
(456 SE2d 93)

SMITH, Judge.

Dennis and Faye Nelson brought suit against the Polk County Historical Society, as landlord, for injuries resulting when tenant Dennis Nelson, along with a ladder and a negligently constructed church awning, fell to the ground. Nelson was pastor of a small church group using the property at the time of the incident. The awning was added by a former tenant — also a church group. Due to his resulting severe and permanent brain injury, Nelson cannot recall the

incident, and there were no other witnesses to the fall. The trial court granted the landlord's motion for directed verdict at the close of the Nelsons' case based on the Nelsons' failure to show sufficient evidence that the failure of the church awning to remain attached to the building was a cause-in-fact of his injuries. The landlord also moved for directed verdict on the basis that no duty owed to the Nelsons was breached, but the trial court rejected this theory. The Nelsons appeal.

1. As a preliminary matter, we note that the Nelsons' burden at trial was to show that: (1) they would not have suffered the injuries they complain of but for the awning's negligent construction; (2) the landlord owed a duty to the Nelsons to inspect the awning; (3) the duty was breached; (4) the breach contributed to Dennis Nelson's fall by causing the latent hazard to remain unknown and uncorrected; (5) the landlord's role in causing Nelson's fall was a "proximate cause" of that fall; and (6) harm resulted to the Nelsons from the fall for which damages are recoverable. See generally *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982).

However, since this is an appeal from the grant of directed verdict, we consider only whether the directed verdict was proper on any of the specific grounds properly raised in the landlord's motion. See generally *Grabowski v. Radiology Assoc.*, 181 Ga. App. 298, 299-300 (2) (352 SE2d 185) (1986). Our review is therefore restricted to whether there was sufficient evidence introduced that the negligent construction of the awning contributed to Nelson's fall and, if so, whether the landlord can be held liable for failing to discover and at least warn Nelson about the negligently constructed awning.

2. " 'On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.' Prosser and Keaton on Torts (5th ed. 1984), § 41, p. 269." *Anneewakee, Inc. v. Hall*, 196 Ga. App. 365, 367 (1) (396 SE2d 9) (1990).

Toward this end, the Nelsons presented the following evidence, which we view most strongly in their favor. On the previous evening Nelson made known that he planned to tack a piece of plyboard over a window located a few inches directly above the awning. He was to do this to cover an opening in the window frame where a piece of plexiglass had blown out. The next morning, Faye Nelson understood that her husband was headed to church to "see what had to be done" to fix the window. Shortly after Nelson arrived, a neighbor heard a

"crashing sound." Nelson was eventually found "laying with his head toward the church on his side or — kind of face down, but his head was turned to the side." The awning "was laying up against him . . . on the steps." The ladder, Nelson's hammer, and the plyboard were also found on the ground nearby. The awning had to be moved in order for ambulance personnel to assist Nelson.

Appellee's position on appeal, as stated by the trial court prior to its ruling, is that the jury had no basis to determine whether Nelson simply fell off the ladder, hitting the awning and causing it to fall with him, or whether the awning failed to hold his weight. However, such reasoning misses the point, which is whether Nelson would have experienced the impact with the ground and the injuries he in fact experienced *but for* the failure of the negligently constructed awning to remain in place. The jury was certainly given a reasonable evidentiary basis to infer, by a preponderance of the evidence, that Nelson would not have sustained the injuries he suffered but for the failure of the awning to remain attached. The trial court erred in holding there was a failure of proof on the issue of causation.[1] See generally *Atlanta Obstetrics &c. v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990).

3. Within the confines of *Grabowski*, supra, we agree with the landlord's contention that "[i]t is the grant [of directed verdict] itself that is to be reviewed for error, and not the analysis employed. [Cit.]" *Albany Oil Mill v. Sumter EMC*, 212 Ga. App. 242, 243 (3) (441 SE2d 524) (1994). Accordingly, even though the trial court rejected the landlord's argument that it was not legally responsible for the negligent construction performed by its former tenant, we may nevertheless consider whether the grant of directed verdict was right for this reason. We hold that it was.

The landlord conceded during the hearing on its motion that it had a duty (presumably for Nelson's benefit) to inspect the awning. It therefore follows that at the time this incident occurred, the landlord is deemed to have knowledge superior to Nelson's of any defects that only an inspection of the awning would have revealed. See generally *Harris v. Sloan*, 199 Ga. App. 340, 341-342 (1) (405 SE2d 68) (1991). However, on this critical point the evidence at trial showed only that the landlord "had no actual knowledge of the construction defect, and [it] established a lack of actionable constructive knowledge by demonstrating that [it] was incapable of discovering it by means of reasonable inspection." *Barksdale v. Nuwar*, 203 Ga. App. 184, 185 (416

---

[1] In the interest of clarity, we point out that in its motion for directed verdict, the landlord did not present a question of whether Nelson could have placed more stress on the awning than a properly constructed awning would be designed to withstand, but simply whether Nelson's injuries can be fairly attributed to the failure of the awning to sustain whatever force Nelson applied to it.

SE2d 546) (1992).

Specifically, the Nelsons' expert testified that the awning was fastened to the wall of the church by 16-penny nails that, according to the expert, did not sufficiently penetrate into the structural members of the church building. However, the expert also confirmed that the only way to inspect such a defect would be to remove the awning from the building. The expert further testified that "I don't think just the average person would be able to tell. The only thing you could really see would be a visual inspection with the fastening schedule. And you can visibly see the metal flashing and supporting of it. But a normal person would not — probably would not know that it was not properly supported or fastened."

In light of this testimony by plaintiffs' expert, which was not contradicted, the reasoning of *Barksdale v. Nuwar*, supra, controls our decision in this case. The Nelsons do not contend that the landlord had the type of knowledge required to detect the negligent construction. The jury therefore could not reasonably have found that the landlord's failure to inspect was a breach of a duty owed to Nelson that in any way contributed to his injuries. Also, while cases mention in passing the rule "that the landlord is conclusively presumed to have knowledge" of construction defects (see, e.g., *Parking Co. of America v. Sucan*, 195 Ga. App. 616, 617 (1) (394 SE2d 411) (1990)), this rule applies only when the landlord was the builder or when the builder was otherwise acting under the landlord's supervision or direction. *Dobbs v. Noble*, 55 Ga. App. 201, 203 (3) (189 SE2d 694) (1937). We note, too, that there is no contention the awning was placed on the church with the landlord's consent so as to make the landlord liable for this improvement under OCGA § 44-7-13; on the contrary, the landlord was apparently not at all pleased with the unauthorized addition to the historic structure.

Finally, while we acknowledge that the plaintiffs' expert identified certain building code violations in his testimony, there was no evidence presented that the landlord was or should have been aware of those violations. *Bastien v. Metro. Park Lake Assoc.*, 209 Ga. App. 881 (434 SE2d 736) (1993), is readily distinguishable in that *Bastien* involved a patent failure to *supply* a handrail required by an applicable building code. In contrast, this case, like *Barksdale*, supra, involves a latent defect the landlord did not create and could not discover by ordinary means.

Because no breach of duty by the landlord contributed to Nelson's fall, we affirm the trial court's grant of directed verdict here.

4. Our holding in Division 3 renders the Nelsons' remaining enumeration moot.

*Judgment affirmed. Birdsong, P. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Andrews, J., concurs in Division 3 and*

*in the judgment. Beasley, C. J., concurs in the judgment only. Mc-Murray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent from the judgment affirming the direction of the verdict against plaintiffs in the case sub judice. There is evidence from which the trier of fact could determine that the owner acquiesced in the erection of this awning (by previous occupants) without insisting that the addition comply with the 1985 Standard Building Code in its attachment to the structure. This is some evidence of causation. Surely, the fact that it would have been difficult to determine this noncompliance with an after-the-fact visual inspection does not relieve the owner of the responsibility to have the improvement accomplished correctly in the first instance.

I agree that *Bastien v. Metro. Park Lake Assoc.*, 209 Ga. App. 881 (434 SE2d 736), is not applicable because the structure here is a meeting hall and not a residence. While the tenant may not waive the rights and the landlord may not avoid any of the duties enumerated at OCGA § 44-7-2 (b) (1) through (b) (7) in "any contract . . . for the use or rental of real property as a dwelling place," the converse proposition is that the parties may contractually alter these statutory rights and duties with respect to the rental of real property for purposes other than a (mundane) dwelling place. See OCGA § 44-7-2 (b). See, e.g., *Wilkerson v. Chattahoochee Parks*, 244 Ga. 472, 473 (3) (260 SE2d 867); *Colonial Self Storage of the South East v. Concord Properties*, 147 Ga. App. 493, 494 (1), 495 (249 SE2d 310). Accordingly, the landowner may validly insist that the occupier be responsible for repairs, shifting the statutory obligations of OCGA § 44-7-13. Assuming, without deciding, that the parties could agree to exculpate the owner from liability for injuries received because of negligent repairs, the evidence in the case sub judice does not address that point regarding the earlier church group and is not conclusive with respect to plaintiffs and their organization.

DECIDED MARCH 17, 1995 —

*Daniel B. Simon III*, for appellants.
*Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert L. Berry, Mark M. Webb*, for appellee.