A96A1681. JENKINS v. BI-LO, INC.
(479 SE2d 14)

RUFFIN, Judge.

Dorothy Jenkins slipped and fell on string beans on the floor of Bi-Lo, Inc.'s grocery store. Jenkins appeals the trial court's order granting summary judgment to Bi-Lo, and we affirm.

Summary judgment is appropriate when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Viewed in that light, the record shows the following. Jenkins was pushing a shopping cart in Bi-Lo's produce section when she slipped and fell on string beans. Jenkins was looking straight ahead as she was pushing her shopping cart toward the back of the store. According to Jenkins, the string beans looked old. Jenkins had been shopping at Bi-Lo for approximately 20 years. She admitted the lighting was adequate and that

she was not distracted by anything or any person in the store. In addition, she acknowledged that no Bi-Lo employees were in the area before she fell, that she did not know how long the string beans had been on the floor, and that she did not know how long it had been since a Bi-Lo employee had been in the area where she fell.

Richard Woodard, Bi-Lo's produce clerk, testified that he inspected the floor where Jenkins fell approximately ten minutes prior to the incident. He admitted in his deposition that string beans on the floor of the produce section was a regular problem because customers drop them on the floor. However, he testified that either no string beans were on the floor during his inspection ten minutes earlier or that he picked up all the string beans he found on the floor during his inspection. In either event, it is clear that Woodard's testimony shows that no string beans were on the floor after his inspection ten minutes earlier.

"[I]n order to state a cause of action in a case where the plaintiff alleges that due to an act of negligence by the defendant [she] slipped and fell on a foreign substance on the defendant's floor, the plaintiff must show (1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). "[I]f [Jenkins] is unable to prove either element of the *Alterman* test, a failure of proof results. [Cit.]" *Winn Dixie Stores v. Carroll*, 212 Ga. App. 234 (441 SE2d 432) (1994). Jenkins has presented *no* evidence contradicting Bi-Lo's evidence that it had no actual knowledge that string beans were on its floor. Thus, the issue presented in this case is whether Bi-Lo had constructive knowledge of the allegedly hazardous condition.

Constructive knowledge can be established with evidence that either Bi-Lo failed to exercise reasonable care in inspecting its premises or an employee was in the immediate vicinity of the hazardous condition and could easily have noticed and corrected it. *Ballard v. Southern Regional Med. Center,* 216 Ga. App. 96 (1) (453 SE2d 123) (1995); *Drake v. Kroger Co.*, 213 Ga. App. 72, 73 (1) (443 SE2d 698) (1994). "To sustain [a] cause of action under this first kind of case it is necessary that [Jenkins] prove a period of time the dangerous condition has been allowed to exist. Without such proof it would not be possible to determine whether [Bi-Lo] had been afforded a reasonable time within which to inspect and remove the hazard." (Citation and punctuation omitted.) *Drake*, supra at 73. In this case, Jenkins cannot establish that Bi-Lo failed to exercise reasonable care in inspecting the area because the undisputed evidence showed that Woodard inspected the floor approximately ten minutes before Jen-

kins' fall. See id. See also *Butler v. Lanier Park Regional Hosp.*, 220 Ga. App. 386 (469 SE2d 475) (1996); *Mazur v. Food Giant,* 183 Ga. App. 453 (1) (359 SE2d 178) (1987). In addition, Jenkins failed to show constructive knowledge based on a negligent inspection of the premises because there was *no* evidence presented regarding the length of time the string beans were permitted to remain on the floor. See *Ballard,* supra.

Although we construe the evidence and all reasonable inferences in Jenkins' favor, the fact that Bi-Lo's produce manager admitted there were regular problems with string beans on the floor and that he might have picked up string beans ten minutes earlier during his inspection does not create a jury issue for reasons which follow. Woodard unequivocally and indisputably testified that he either picked up all the string beans during his inspection or there were no string beans on the floor during his inspection. Jenkins presented no evidence showing the period of time the string beans she slipped on had been allowed to exist. See *Drake,* supra. Neither is a jury issue created simply because old string beans caused Jenkins' fall. Again, Woodard's undisputed testimony shows there were no string beans on the floor ten minutes prior to Jenkins' fall.

In addition, Jenkins has failed to present any evidence showing that a Bi-Lo employee was in the immediate vicinity of the fall and could easily have noticed the string beans and removed them. In fact, she testified that she *did not* know how long the string beans had been on the floor and that she *did not* know when a Bi-Lo employee was last in the area. "There is nothing to show [Bi-Lo's] employees had the opportunity to see the [string beans] and remove [them] before [Jenkins] fell. Under the evidence in the case, the [string beans] could as easily have fallen to the floor mere seconds before [Jenkins] fell." *Mitchell v. Food Giant,* 176 Ga. App. 705, 709 (337 SE2d 353) (1985).

Since Jenkins failed to present evidence of the first prong of the *Alterman* test, showing Bi-Lo had actual or constructive knowledge of the allegedly hazardous condition, the trial court did not err in granting summary judgment to Bi-Lo.

*Judgment affirmed. Beasley, C. J., Birdsong, P. J., Pope, P. J., Andrews, Johnson and Smith, JJ., concur. McMurray, P. J., and Blackburn, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the affirmance of summary judgment in plaintiff Dorothy Jenkins' tort action against defendant Bi-Lo, Inc. In my view, a jury — and not this Court — should determine whether it is clear from the testimony of Richard Woodard, Bi-Lo's produce clerk, that in fact no string beans were on the floor where

plaintiff fell when he inspected that area ten minutes before the mishap.

1. On this particular occasion, plaintiff had been in defendant's market "about one minute [as she] picked [her] cart up and went around the corner." She "was going to the back of [defendant's] store to the meat counter. But [she] didn't get [any] further than around the corner from where the baskets were. And when [she] turned the corner with the basket, [she] was sliding down on [her] ankle." In its answer, defendant admitted the allegations that "photographs of the plaintiff's lower leg and foot and of beans on the floor were taken by store personnel, and that plaintiff reported she slipped and fell on beans. . . ." When the store manager, Bennie Purvis, investigated the accident, he saw a snap bean on the floor, "12 to 14 feet" from where the snap beans were displayed. "It had been stepped on or it had been disfigured." To Bennie Purvis, it looked "[n]ew." But according to plaintiff, "They looked like they [were] old. I mean, they didn't look like new, like fresh string beans. . . . It was just messy around the area." Since the evidence on this point is in conflict it must be viewed in the light most favorable to the plaintiff as non-movant. Thus, there is evidence that the beans looked old, not fresh, and were messy. In my view, this authorizes the favorable inference that the beans had been there for some time, i.e., long enough to have been traipsed through by other patrons. "The mere fact of the presence of a banana peel on a floor may not be sufficient to show that it has been there long enough for reasonable care to require the defendant to discover and remove it, but if it is 'black, flattened out and gritty,' the conclusion may reasonably be drawn. It is for the court to determine, in the first instance, whether reasonable persons on the jury may draw it." Prosser & Keeton, The Law of Torts (5th ed. 1984), § 39, p. 243 and footnote 14, citing *Anjou v. Boston Elevated R. Co.*, 94 NE 386 (Mass. 1911).

2. Plaintiff affirmed that she "was looking where [she] was going." "From a standing-up position looking down [she] could [not] have seen the beans . . . [b]ecause [she] was pushing the cart around the corner, and the cart was in front of [her]. And [she] didn't see them [the beans] until [she] went down. . . ." Consequently, there is no admission by plaintiff that she failed to exercise ordinary care for her own behalf. Compare *Baker v. Winn Dixie Stores,* 219 Ga. App. 513 (465 SE2d 710).

3. The complaint further alleged that the dangerous condition "was known to the defendant or it had existed for a sufficient length of time so that defendant should have known of it." Defendant attempted to pierce this allegation of knowledge with the testimony of Richard Woodard, who has since been transferred to another location because of "productivity problems." According to Bennie Purvis,

Richard Woodard did not know "how to train or control the other associates in his department." Richard Woodard also had "[p]roblems with such as freshness checks. Ensuring that the associates were doing freshness checks, having only quality produce on the rack." Richard Woodard affirmed that he "used to be a manager and [is] now a clerk[.]" He accepted a pay differential of approximately $130 per week because he "decided to step out of the [managerial] position." "[I]t was time for [Richard Woodard] to take some of the stress out of [his] life at that time."

As recounted by the majority, Richard Woodard testified that "about ten minutes" before the incident, he inspected the area. He knew that loose beans on the floor were a recurring safety hazard. In his experience, "when people pick the green beans up, as they pick them up, they're just dropping — one single bean individual bean is dropping out of their hands, and, of course, they're not going to pick them up. They'll just walk away from them." Richard Woodard affirmed that he had "pick[ed] up . . . other green beans off the floor that day[.]" "During a day's time, he might pick up 20, 30, *but not in the area where she fell at.*" (Emphasis supplied.) Rather, he picked them up "[r]ight where the green beans are stored." This was, in Richard Woodard's estimation, "about 20 feet . . ." from where plaintiff fell. Richard Woodard could not recall that photographs were taken of the scene.

*"The credibility of a witness is a matter to be determined by the jury under proper instructions from the court."* (Emphasis supplied.) OCGA § 24-9-80. In my view, the jury could disbelieve the testimony of Richard Woodard, who voluntarily took a pay cut of $6,500 in order to return to a clerk's position after being a less than successful produce manager for defendant. If he failed to manage his subordinates to assure freshness, it is possible he was less than diligent about safety matters. Moreover, the jury could believe that he was not accustomed to looking for beans at a distance of 20 feet from the produce section where they are stored, but relied on previous experience in finding them only in front of that section. Thus, the jury could conclude that Richard Woodard did not look, or if he looked, that he yet missed the beans that were indisputably there when plaintiff slipped. In my judgment, the trial court erred in granting defendant's motion for summary judgment because genuine issues of material fact, including the credibility of defendant's main witness, Richard Woodard, remain for jury determination. See *Mitchell v. Rainey*, 187 Ga. App. 510 (370 SE2d 673). As my colleagues in the majority would nevertheless affirm that unwarranted grant of summary judgment, I respectfully dissent.

I am authorized to state that Judge Blackburn joins in this dissent.

Decided December 3, 1996.

*Jeffrey S. Bowman*, for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, Neil S. Bitting, Jr., Barry A. Fleming*, for appellee.