A99A1573. J. H. HARVEY COMPANY v. REDDICK.
(522 SE2d 749)

RUFFIN, Judge.

J. H. Harvey Company ("Harvey") appeals from the trial court's denial of its motion for summary judgment in this slip-and-fall premises liability case. Harvey also appeals the trial court's denial of its motion to strike and objections to plaintiff Carolyn Reddick's deposition errata sheet. For reasons that follow, we affirm.

---

1. The standard of review applicable to motions for summary judgment is well established:

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Moreover, with respect to slip-and-fall cases, we are reminded by the Supreme Court that

> the "routine" issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and that summary judgment is granted only when the evidence is plain, palpable, and undisputed.

*Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997).

Viewed in the light most favorable to Reddick, the evidence shows as follows. At approximately 5:55 p.m. on September 5, 1996, Reddick slipped and fell while shopping in a Harvey grocery store in Americus. Reddick was walking down an aisle displaying bread on one side and frozen foods on the other when her right foot slipped on "something slippery," causing her to fall forward onto her knees. As she was getting up, Reddick saw two scuppernongs[1] on the floor to her left. Reddick does not know whether she actually stepped on the scuppernongs, does not recall whether they were whole or squashed flat, and does not know if they caused her to fall. Reddick does not recall seeing anything else on the floor that might have caused her to fall, and she does not remember seeing any substance on the knees of her slacks after she got up. Reddick assumed, however, that the scuppernongs caused her to fall because she noticed them on the floor near her after she fell.

After Reddick got up, she reported the incident to the store's assistant manager, Bruce Jones. Reddick and Jones returned to the aisle where Reddick had fallen, and Jones saw two scuppernong skins on the floor. According to Jones, scuppernongs are generally located in the produce department, several aisles away, and one

---

[1] During her deposition, Reddick referred to the fruits she saw as plums, but in a subsequent affidavit, Reddick stated that she has since learned that they are called scuppernongs, which are large grapes. See Webster's New Intl. Dictionary (2nd ed.), p. 2252.

would not expect to find them in the aisle where Reddick fell. After examining the area, Jones completed an accident report in which he stated that "[a]n unknown customer was apparently eating scuppernongs and threw the outer skin on the floor. (2 scuppernongs). [Reddick] walked around the corner next to the bread and said she slipped and fell on her knees." During his deposition, Jones explained that in the past, customers at the store had eaten scuppernongs and thrown them on the floor. A former Harvey employee, Reginald Adams, testified by affidavit that the Americus store "had problems with items on the floor. These problems included customers eating items in the store and then throwing the items on the floor."

Harvey filed a motion for summary judgment, and the trial court denied it. We then granted Harvey's application for interlocutory appeal.

To prove negligence in a foreign substance slip-and-fall case, the plaintiff must show "(1) that the defendant had actual or constructive knowledge of the foreign substance and (2) that the plaintiff was without knowledge of the substance or for some reason attributable to the defendant was prevented from discovering the foreign substance." (Punctuation omitted.) *Robinson,* supra at 736. Harvey maintains that it is entitled to summary judgment on several grounds, each of which we reject.

(a) First, Harvey argues that Reddick failed to present any evidence that her fall was caused by the scuppernongs on the floor of the store. To survive summary judgment, a slip-and-fall plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." (Punctuation omitted.) *Christopher v. Donna's Country Store,* 236 Ga. App. 219, 220 (1) (511 SE2d 579) (1999). Reddick admitted during her deposition that she did not know what caused her to fall, but stated that she assumed the scuppernongs were responsible. Citing *Hall v. Cracker Barrel &c.,* 223 Ga. App. 88 (476 SE2d 789) (1996), Harvey contends that Reddick's testimony demonstrates the absence of causation in this case. We disagree.

In *Hall,* the plaintiff slipped and fell on wood flooring which she described as "slippery." Id. at 88. Although she alleged that the floor was excessively waxy, the plaintiff failed to present any evidence of a foreign substance on the floor which could have created a slippery condition. Likewise, the plaintiff failed to show that the defendant improperly cleaned or maintained the floors. We concluded that the plaintiff's bare assertion that the floor was "slippery," without more, was insufficient to create an issue of fact as to whether the fall was caused by the defendant's negligence. Id. at 93. We noted that "proof of nothing more than the occurrence of the fall is insufficient to

establish the proprietor's negligence." (Punctuation omitted.) Id. at 90.

In this case, by contrast, Reddick *has* presented evidence of a foreign substance — two scuppernongs on the floor in the area where she fell — that could have created the slippery condition she alleged. We are required on a motion for summary judgment to view the facts and inferences in a light most favorable to Reddick. See *Lau's Corp.*, supra. Although Reddick could not positively state that the scuppernongs caused her to fall, reasonable jurors could make such an inference based on the proximity of the fruit to Reddick after the fall, the alleged "slippery" condition of the floor, and the assistant manager's statement after Reddick's fall that he saw scuppernong skins, rather than whole fruit. See *Williams v. EMRO Marketing Co.*, 229 Ga. App. 468, 472 (2) (494 SE2d 218) (1997) (Ruffin, J., concurring specially) (evidence permitted reasonable inference that plaintiff slipped and fell on ice even though plaintiff did not see what he slipped on).

(b) Second, Harvey contends that Reddick failed to prove that it had actual or constructive knowledge of the presence of the scuppernongs on the floor. Reddick argues that Harvey had both actual and constructive knowledge of the hazard. We find no evidence of actual knowledge, but agree with Reddick that there are factual disputes concerning Harvey's constructive knowledge.

Reddick's actual knowledge argument is based on (1) Jones' deposition testimony that customers previously had eaten scuppernongs and thrown them on the floor and (2) the affidavit of former Harvey's employee Reginald Adams that the store had a problem with customers throwing food on the floor. To establish actual knowledge, however, Reddick must do more than merely show that Harvey's employees had a general knowledge that a hazardous condition might exist. See *J. H. Harvey Co. v. Johnson*, 211 Ga. App. 809, 810 (440 SE2d 548) (1994) ("although management had knowledge of the periodic defrosting of the meat cooler, the record does not show that any employee or manager of the supermarket had actual knowledge of the alleged water leakage onto the floor prior to Johnson's fall"), overruled in part on other grounds, *Robinson*, supra. Here, Jones testified merely that customers had thrown scuppernongs on the floor *in the past*. There is no evidence concerning the date or frequency of such incidents and no evidence that Jones had actual knowledge of any customers throwing food on the floor on the day that Reddick fell. Adams averred only that the store had "problems with items on the floor . . . includ[ing] customers eating items in the store and then throwing the items on the floor." Adams did not state that he was aware of scuppernongs on the floor on the day of Reddick's fall, or even that he was working in the store that day. This evidence is not sufficient to establish Harvey's actual knowledge of the hazard.

Reddick also maintains that Harvey had constructive knowledge of the hazard. Constructive knowledge can be proven by showing either (1) "that an employee of the proprietor was in the immediate area of the hazardous condition and could have easily seen the substance" or (2) "that a foreign substance remained on the floor for such a time that ordinary diligence by the proprietor should have effected its discovery." (Punctuation omitted.) *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629, 631 (3) (b) (493 SE2d 196) (1997). As Reddick testified that she did not see any Harvey employees around when she fell, and there was no *other* evidence of store employees in her immediate vicinity, she must use the second method of proving constructive knowledge. To withstand a motion for summary judgment using that method, "a plaintiff need not show how long a substance has been on the floor unless the defendant has established that reasonable inspection procedures were in place and followed at the time of the incident." *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29, 30 (1) (500 SE2d 353) (1998) (whole court). Thus, we must determine whether Harvey has established that it had in place a reasonable inspection procedure which it was following on the afternoon of Reddick's fall.

Harvey presented evidence that, at the time of Reddick's fall, the Americus store had an inspection policy requiring that the floor be swept and spot mopped at least every two hours, or more often as needed. The sweeping included spot mopping to remove foreign substances from the floor. Employees were required to punch in and out on a "sweep card" when beginning and ending the sweep and to initial the card upon completion. Harvey also submitted the affidavit of employee Brad Satterfield, who averred that on the day Reddick fell he swept the entire floor area of the store from 3:25 p.m. until 4:14 p.m., and again from 5:17 p.m. until 6:01 p.m., as indicated on the relevant sweep card. Satterfield testified that he swept the aisle where Reddick fell approximately one hour and forty-two minutes before her fall and found no trash, debris, or liquid in the area. Finally, Harvey submitted the sweep card for the week of Reddick's fall, which bears Satterfield's initials beside two punched entries on the day in question recording time "in a type of military time with minutes reflected in hundredths of an hour." In the absence of any evidence to the contrary, the sweep card, coupled with the testimony of Jones and Satterfield, establishes that the area where Reddick fell was swept one hour and forty-two minutes prior to her fall, and that no foreign substance was found.[2]

---

[2] Reddick contends that the sweep card is inadmissible hearsay that does not meet the requirements of the business records exception. We disagree. Jones testified that the sweep card for the week ending September 7, 1996, was kept in the ordinary course of business and

We cannot conclude as a matter of law, however, that Harvey's inspection procedure was reasonable under the circumstances. The length of time that a foreign substance must remain on the floor before a proprietor should have discovered it — and, by extension, what constitutes a reasonable frequency of inspections — "will vary with the circumstances of each case (the nature of the business, size of the store, the number of customers, the nature of the dangerous condition and the store's location)." (Punctuation omitted.) *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508, 510 (2) (496 SE2d 732) (1998). In cases where a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, we have held that the inspection procedure was adequate as a matter of law. See, e.g., *Deloach v. Food Lion*, 228 Ga. App. 393, 394-395 (491 SE2d 845) (1997) (area where plaintiff fell was inspected ten minutes prior to fall, establishing reasonable care as a matter of law); *Jenkins v. Bi-Lo*, 223 Ga. App. 735, 736-737 (479 SE2d 14) (1996) (same); *Super Discount Markets v. Clark*, 213 Ga. App. 132, 133 (443 SE2d 876) (1994) (inspection occurred fifteen to twenty minutes prior to incident). Here, the floor had not been swept or inspected for one hour and forty-two minutes before Reddick fell, and the scuppernongs could have remained on the floor that long. There also was testimony that Harvey was aware that customers occasionally ate food — including scuppernongs — and threw the residue on the floor, and that the floor was brown and could camouflage dropped or spilled food. Moreover, Jones admitted during his deposition that one hour and forty-two minutes was "too long for a substance to be on the floor." Under these circumstances, we conclude that the reasonableness of Harvey's inspection and cleaning procedures is a question for the jury and that Harvey was not entitled to summary judgment on the issue of constructive knowledge. See *Jones v. Krystal Co.*, 231 Ga. App. 102, 104-105 (d) (498 SE2d 565) (1998) (failure to inspect floor of fast food restaurant for twenty minutes or longer could be unreasonable); *Smith v. Toys "R" Us*, 233 Ga. App. 188, 191-192 (1) (504 SE2d 31) (1998) (failure to inspect store entrance area during period of one hour and thirty minutes gave rise to jury question on reasonableness of inspection procedures).

(c) Harvey also sought summary judgment on the ground that Reddick failed to exercise ordinary care for her own safety. Reddick

---

included all entries for the day of Reddick's fall. Satterfield testified that he personally swept the floor twice that day, as reflected by the entries on the sweep card initialed by him. This evidence satisfies the foundational requirements of OCGA § 24-3-14 (b). See *Mealor v. State*, 233 Ga. App. 193, 194 (2) (504 SE2d 29) (1998) (explaining requirements); *Peachtree North Apts. v. Arkhora Assoc.*, 140 Ga. App. 20, 21 (2) (230 SE2d 83) (1976) (testimony of corporate officer that time sheets were kept in normal course of business established admissibility).

testified that she did not look down at the floor before she fell. She also testified that the fruit on which she allegedly slipped was large and could have been as big in diameter as a soda can. Harvey argues that this evidence establishes that had she been exercising ordinary care for her own safety, Reddick would have noticed the fruit before she fell. However, this, too, is a jury question.

In *Robinson*, the Supreme Court rejected the argument that "an invitee fails to exercise ordinary care for personal safety as a matter of law when the invitee admits she failed to look at the location where she subsequently placed her foot." Id. at 743. An invitee is not required to maintain a constant lookout, but "is entitled to assume that the owner/occupier has exercised reasonable care to make the premises safe." Id. Accordingly, Reddick's failure to look before she stepped does not establish negligence on her part as a matter of law. Additionally, contrary to Harvey's assertions, the evidence does not establish conclusively that Reddick would have noticed the fruit had she glanced down. The size of the scuppernongs is a matter of dispute, as Jones testified that they were approximately the size of a quarter. Moreover, the evidence showed that the color of the floor could have camouflaged the scuppernongs. Under these circumstances, Harvey is not entitled to summary judgment on this issue. See *Kroger Co. v. Brooks*, 231 Ga. App. 650, 656 (2) (500 SE2d 391) (1998).

2. In its second enumeration of error, Harvey contends that the trial court erred in denying its motion to strike and objections to Reddick's substantive changes to her deposition. We find no error.[3]

After giving her deposition, Reddick submitted an errata sheet listing 16 changes to answers in her deposition transcript. Most of the changes substantively altered her testimony as previously recorded on material issues in the case, but did not clearly contradict it. For example, Harvey's attorney asked Reddick during her deposition about the size of the fruit on which she allegedly slipped, as follows: "Q. We have got a 7-Up can on the table. Were they the size of that 7-Up can, that big around? A. Yes, they were. If I can remember, as far as my knowledge, when I was getting up, they was large red plums." On her errata sheet, Reddick changed her answer to "[t]hey were regular size plums" and gave as the reason for the change, "I did not understand the question." This change is consistent with her answer to a previous question that the plums were "regular" in size. As another example, Reddick replied, "I don't know," when asked in

---

[3] For purposes of ruling on Reddick's motion for summary judgment, we have considered only the original deposition transcript and not the errata sheet. Nevertheless, we address this issue in the event that the parties seek to make use of Reddick's deposition on remand.

her deposition whether she had reached a conclusion about what caused her to fall, but in her errata sheet she changed this answer to "[s]omething slippery on the floor," citing confusion about the question as the reason for the change. The new answer on the errata sheet is consistent with other testimony in Reddick's deposition in which she attributed her fall to a "slippery" substance on the floor. Harvey filed a motion to strike and objections to the errata sheet, arguing that Reddick could not substantively change her deposition testimony because her lawyer did not object to the questions posed to Reddick at the deposition.

OCGA § 9-11-30 (e) provides as follows:

> If requested by the deponent or a party before completion of the deposition, the deponent shall have 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording and, if there are changes in *form or substance*, to sign a statement reciting such changes and the reasons given by the deponent for making them. The officer shall indicate in the certificate . . . whether any review was requested and, if so, shall append any changes made by the deponent during the period allowed.

(Emphasis supplied.) Although our Georgia courts have not directly addressed the question of whether a witness may make substantive, material changes to his deposition,[4] the statute expressly contemplates changes to form *or* substance. In addition, federal courts which have addressed this issue have overwhelmingly concluded that a witness may make "any changes in form or substance which the witness desires, even if the changes contradict the original answers or even if the deponent's reasons for making the changes are unconvincing."[5] (Citation and punctuation omitted.) *Lugtig v. Thomas*, 89 FRD 639, 641 (N.D. Ill. 1981); see also, e.g., *Podell v. Citicorp Diners Club*, 112 F3d 98, 103 (2nd Cir. 1997); *Innovative Marketing &c. v. Norm Thompson Outfitters*, 171 FRD 203, 204-205 (W.D. Tex. 1997); *Allen & Co. v. Occidental Petroleum Corp.*, 49 FRD 337, 340 (S.D. N. Y.

---

[4] In *Young v. YMCA of Metro. Atlanta*, 204 Ga. App. 224 (419 SE2d 97) (1992), a slip-and-fall plaintiff testified at her deposition that she fell on a step because of the presence of soapy water, but later changed her testimony to indicate that she fell because the step was oversized. Although we noted in passing that the plaintiff's errata sheet "is authorized by OCGA § 9-11-30 (e)," the central issue in *Young* was not the scope of the change, but whether the plaintiff properly submitted the errata sheet. Id. at 225.

[5] Because Georgia's Civil Practice Act is modeled on the Federal Rules of Civil Procedure, decisions of the federal courts interpreting the federal rules are persuasive authority. *Ambler v. Archer*, 230 Ga. 281, 287 (1) (196 SE2d 858) (1973).

1970); *Colin v. Thompson,* 16 FRD 194, 195 (W.D. Mo. 1954). These decisions are based on the plain language of Federal Rule 30 (e), which is virtually identical to OCGA § 9-11-30 (e).

There are several important safeguards which curtail abuse on the part of the deponent. First, the deponent's original answers remain part of the record and can be read at trial to impeach the witness or for further clarification. *Scarbrough v. Dover Elevator Co.,* 232 Ga. App. 149, 153 (a), n. 5 (500 SE2d 616) (1998); *Lugtig,* supra at 641. This is because "a deposition is not a 'take home examination' and an 'errata sheet' will not eradicate the import of previous testimony taken under oath." *Rios v. Welch,* 856 FSupp. 1499, 1502 (D. Kan. 1994), aff'd, *Rios v. Bigler,* 67 F3d 1543 (10th Cir. 1995). Second, if the changes are "so substantial as to cause the deposition to become incomplete or useless without further testimony," then the examiner may reopen the deposition and propound further questions to the witness concerning the nature of and reason for the changes. *Allen & Co.,* supra at 341; see also *Lugtig,* supra at 642. Finally, where the deponent is a party, his self-contradictory testimony must be construed against him and cannot create an issue of fact for the purpose of summary judgment unless the contradiction is adequately explained. See *Prophecy Corp. v. Charles Rossignol, Inc.,* 256 Ga. 27, 28-29 (1) (343 SE2d 680) (1986).

Despite the plain language of OCGA § 9-11-30 (e), Harvey argues that a witness' ability to change his deposition is limited by OCGA § 9-11-32 (d) (3) (B), which provides that

> [e]rrors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, . . . and errors of any kind which might be obviated, removed, or cured if promptly presented are waived unless seasonable objection thereto is made at the taking of the deposition.

According to Harvey, Reddick's failure to understand the questions posed to her constituted an error or irregularity that could have been corrected during the deposition and was therefore waived. We disagree. First, we question whether a witness' failure to understand a question is an "error or irregularity" within the meaning of OCGA § 9-11-32 (d) (3) (B). Georgia courts have interpreted deposition errors and irregularities to include such matters as failure of the attorney to object to the form of a question, *Haynes v. McCambry,* 203 Ga. App. 464, 468 (3) (416 SE2d 893) (1992); to the competency of the deponent to testify, *Rigby v. Powell,* 236 Ga. 687-688 (1) (225 SE2d 48) (1976); or to the videotaping of the deposition, *DuBois v. Ray,* 177 Ga. App. 349, 351-352 (1) (339 SE2d 605) (1985). Harvey cites no case

holding that a witness' failure to understand a question constitutes a deposition error or irregularity. Second, as a matter of common sense, the waiver provision of OCGA § 9-11-32 (d) (3) (B) can apply only to errors or irregularities which were known at the time of the deposition. Harvey asserts that Reddick must have known during the deposition that she did not understand the questions at issue, but this is not necessarily the case. Reddick may have thought that she understood the questions, but later realized upon reading them that, in fact, she did not. In light of the plain language of OCGA § 9-11-30 (e) permitting, without limitation, changes to form and substance, we decline to adopt Harvey's strained interpretation of OCGA § 9-11-32 (d) (3) (B).

Applying these principles to the instant case, we find that Reddick was entitled to make the changes to her deposition testimony. She reserved her right to read and sign her deposition transcript, apparently submitted her errata sheet in a timely manner, and provided explanations for the changes. See OCGA § 9-11-30 (e). Although her changes substantively alter her original deposition testimony, they do not clearly contradict it and therefore do not require application of the *Prophecy* rule described above.[6] Under these circumstances, the trial court did not err in denying Harvey's motion to strike and objections.

*Judgment affirmed. Johnson, C. J., McMurray, P. J., Pope, P. J., Smith and Eldridge, JJ., concur. Andrews, P. J., dissents.*

ANDREWS, Presiding Judge, dissenting.

J. H. Harvey Company (Harvey) was entitled to summary judgment because there is an absence of evidence to support Reddick's claim that Harvey had actual or constructive knowledge of the hazard.

In order for Reddick to prevail on her claim against Harvey, she was required to prove that Harvey had actual or constructive knowledge of the hazard which she claims caused her slip and fall. *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (493 SE2d 403) (1997); *Alterman Foods v. Ligon*, 246 Ga. 620, 622-623 (272 SE2d 327) (1980). Since there was no evidence that Harvey had actual knowledge of the hazard prior to the slip and fall, the issue is whether Harvey had constructive knowledge. There being no evidence that any Harvey employee was in the immediate area of the hazard and could have easily seen and removed it prior to the fall, this method of proving constructive knowledge was not available to Reddick. Moreover, there was no evidence as to how long the hazard at issue had been on

---

[6] In any event, Harvey does not seek to apply the *Prophecy* rule here, but only challenges Reddick's right to make substantive changes to her deposition.

the floor before Reddick apparently slipped on it and fell, or how it got there. As set forth in the majority opinion, the critical issue on these facts is whether Harvey had constructive knowledge of the hazard because it had remained on the floor for such a length of time that the hazard should have been discovered and removed by Harvey in the exercise of ordinarily diligent inspection and cleaning procedures. *Brown v. Piggly Wiggly Southern*, 228 Ga. App. 629, 631 (493 SE2d 196) (1997).

On these facts it is a matter of pure speculation as to whether the hazard may have been placed on the floor a minute or two before Reddick slipped on it, or whether it may have been placed on the floor shortly after Harvey inspected and swept the area some one hour and forty-two minutes prior to Reddick's slip and fall. Clearly, if the hazard was placed on the floor only a minute or two before Reddick's slip and fall, no reasonable trier of fact could conclude that the hazard should have been discovered and removed by Harvey in the exercise of ordinarily diligent inspection procedures. On the other hand, even if Harvey had no actual knowledge of the hazard on the floor, if the hazard had been on the floor since shortly after the last floor inspection for almost one hour and forty-two minutes prior to Reddick's slip and fall, a reasonable trier of fact could conclude that it had been there long enough so that a reasonable inspection procedure would have discovered it, and thus constructive knowledge of it should be imputed to Harvey. In other words, a reasonable trier of fact could conclude under the circumstances that ordinary diligence required Harvey to inspect the floor for hazards more often than every one hour and forty-two minutes, but no reasonable trier of fact could conclude that ordinary diligence required Harvey to inspect the floor every minute or two. As this Court has repeatedly held for decades:

> To sustain plaintiff's cause of action in the failure to inspect case it is necessary that she prove a period of time the dangerous condition has been allowed to exist. Without such proof, it would not be possible to determine whether the defendant had been afforded a reasonable time within which to inspect and remove the hazard. *Banks v. Colonial Stores*, 117 Ga. App. 581 (161 SE2d 366) (1968). *Winn-Dixie Stores, Inc. v. Hardy*, [138 Ga. App. 342, 345 (226 SE2d 142) (1976)].

(Punctuation omitted.) *Kroger Co. v. Brooks*, 231 Ga. App. 650, 654 (1) (b) (500 SE2d 391) (1998). Similarly, our Supreme Court has held:

> [Although] the proprietor may be liable if he fails to exercise reasonable care in inspecting and keeping the premises in

safe condition[,] [t]o sustain a cause of action in [this] type case the plaintiff must show that the foreign substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant. The length of time which must exist to show that the defendant had an opportunity to discover the defect will vary with the circumstances of each case[,] the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition and the store's location.

(Citations and punctuation omitted.) *Alterman Foods*, 246 Ga. at 622-623.

It follows that, if there is no evidence as to how long the hazard had been on the floor before Reddick slipped and fell on it, neither a judge nor a jury as the trier of fact could conclude, without speculating, that the hazard had been there long enough so that it should have been discovered by Harvey had reasonable inspections been performed. It also follows that, if the hazard had not been on the floor long enough to have been discovered by a reasonable inspection, then any failure by Harvey to conduct a reasonable inspection was not the cause of Reddick's slip and fall. Rather, if the hazard had been on the floor, for example, only a minute or two before Reddick slipped and fell on it, the sole cause of the slip and fall was the negligence of the unknown party who placed the hazard on the floor. In the absence of any evidence as to how long the hazard had been on the floor before Reddick slipped and fell, the trier of fact would be left to speculate as to how long it had been there and whose negligence caused the slip and fall.

A verdict finding that a defendant's negligence caused the plaintiff's injury cannot be sustained on the basis of speculation or conjecture.

On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

(Citations and punctuation omitted.) *Nelson v. Polk County Historical Society*, 216 Ga. App. 756, 757 (456 SE2d 93) (1995). Thus, a

determination as to how long the hazard was on the floor prior to the slip and fall is essential to Reddick's claim that Harvey had constructive knowledge of the hazard because it had been on the floor long enough to have been discovered by a reasonable inspection. *Alterman Foods*, 246 Ga. at 623; *Colonial Stores*, 117 Ga. App. at 581; *Brooks*, 231 Ga. App. at 654. Since the trier of fact in the present case cannot be allowed to speculate as to whether the hazard had been on the floor for as little as a minute or for as much as one hour and forty-two minutes, Harvey would be entitled to a directed verdict at any trial where Reddick sought to prove that Harvey's negligent failure to conduct reasonable inspections caused her slip and fall. *Nelson*, 216 Ga. App. at 757.

One would logically assume that any case whose evidentiary posture would entitle the defendant to a directed verdict at trial would also entitle the defendant to pre-trial summary judgment so as to avoid the expense of an unwinnable trial. This was the clear message sent by our Supreme Court when in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), it adopted what had long been the summary judgment rule in federal courts:

> A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).

Id. Although Harvey had the burden on its motion for summary judgment of showing that there is no material issue of fact, Harvey's defense that it lacked constructive knowledge of the hazard is not an affirmative defense, and the evidentiary burden at trial on this issue rests with Reddick. *Sharfuddin v. Drug Emporium*, 230 Ga. App. 679, 685 (498 SE2d 748) (1998); *Robinson*, 268 Ga. at 748-749. Since Harvey has no burden to produce evidence at trial in support of its lack of constructive knowledge defense, under *Lau's Corp.*, Harvey has no burden on summary judgment to affirmatively produce evidence to disprove Reddick's claim that it had constructive knowledge of the hazard; rather it can point to the absence of evidence to support a triable issue on constructive knowledge. Id.

Nevertheless, the majority opinion, and the recent decision of this Court upon which it relies, requires Harvey to do precisely what

*Lau's Corp.* says it is not required to do. Citing this Court's opinion in *Straughter v. J. H. Harvey Co.*, 232 Ga. App. 29, 30 (500 SE2d 353) (1998), the majority opinion holds that, when a slip and fall defendant moves for summary judgment asserting lack of constructive knowledge of the hazard, it cannot discharge its burden by pointing to the absence of evidence as to how long the hazard had been on the floor until it first affirmatively produces evidence to disprove the plaintiff's case by showing that it had in place and followed reasonable inspection procedures at the time of the slip and fall. See Division 1 (b) of the majority. The line of cases relied upon in *Straughter* to support this holding traces its authority back to two 1988 decisions, *Food Giant v. Cooke*, 186 Ga. App. 253 (366 SE2d 781) (1988) and *Winn-Dixie of Greenville v. Ramey*, 186 Ga. App. 257 (366 SE2d 785) (1988). *Cooke* and *Ramey* held that, because the defendant proprietor failed to produce evidence that it conducted a reasonable inspection of the premises, it failed to carry its initial evidentiary burden as the movant for summary judgment to show that the plaintiff's claim that the defendant had constructive knowledge of the hazard was not viable, and thus the burden did not shift to the plaintiff to produce evidence of how long the hazard had been on the floor. *Ramey*, 186 Ga. App. at 258-259; *Cooke*, 186 Ga. App. at 254-256. Both *Cooke* and *Ramey* concluded that the defendant was not entitled to summary judgment because the "[defendant's] evidence did not negate the possibility that, under the existing circumstances, its failure to have discovered the presence of the [hazard on the floor] was the result of its failure to exercise reasonable care in inspecting its premises. See [*Ramey*]." *Cooke*, 186 Ga. App. at 256.

The 1991 Supreme Court decision in *Lau's Corp.*, which specifically overruled anything to the contrary, held that a defendant moving for summary judgment, which does not have the burden of proof at trial, has no burden to produce evidence in order to disprove the plaintiff's case or to shift the evidentiary burden back to the plaintiff. Id. at 491. Accordingly, *Lau's Corp.* specifically overruled the contrary holdings in *Cooke* and *Ramey* upon which *Straughter* and the majority opinion rely. See *Straughter*, 232 Ga. App. at 36-40 (Andrews, C. J., dissenting); *Hartley v. Macon Bacon Tune*, 234 Ga. App. 815, 822-824 (507 SE2d 259) (1998) (Andrews, C. J., dissenting); *Blake v. Kroger Co.*, 224 Ga. App. 140, 147-151 (480 SE2d 199) (1996) (Andrews, J., concurring specially). As I pointed out in my dissent in *Straughter*, the holding there and the holding by the present majority fly in the face of the Supreme Court's decision in *Lau's Corp.* Moreover, these holdings are directly contrary to numerous other slip and fall decisions of this Court which hold in accord with *Lau's Corp.*, that a slip and fall defendant moving for summary judgment and asserting lack of constructive knowledge of the hazard is not

required to produce evidence of compliance with reasonable inspection procedures before it can rely on the absence of evidence as to how long the hazard had been on the floor. *Sharfuddin*, 230 Ga. App. at 686; *Blake*, 224 Ga. App. at 142-150; *Johnson v. Autozone*, 219 Ga. App. 390, 393 (465 SE2d 463) (1995); *Moore v. Kroger Co.*, 221 Ga. App. 520, 521 (471 SE2d 916) (1996); *Haskins v. Piggly Wiggly Southern*, 230 Ga. App. 350, 351 (496 SE2d 471) (1998).

Without evidence as to whether the hazard had been on the floor for as little as a minute or for as long as one hour and forty-two minutes, there is no basis for a reasonable trier of fact to conclude, without engaging in pure speculation or conjecture, that it had been there long enough to have been discovered by a reasonable inspection. Harvey would therefore be entitled to a directed verdict at trial, because it would be impossible for a trier of fact to conclude that a negligent failure by Harvey to conduct a reasonable inspection caused Reddick's slip and fall. *Alterman Foods*, 246 Ga. at 623; *Brooks*, 231 Ga. App. at 654; *Nelson*, 216 Ga. App. at 757. Where the evidence before the trial court on summary judgment would not be sufficient to withstand a motion by Harvey for a directed verdict at trial, the clear message of *Lau's Corp.* is that Harvey is entitled to rely on the absence of such evidence and is entitled to summary judgment. Id. at 491; see also *Porter v. Felker*, 261 Ga. 421 (405 SE2d 31) (1991) (summary judgment appropriate on evidence that would compel a directed verdict); *Eiberger v. West*, 247 Ga. 767, 769 (281 SE2d 148) (1981) (same); *NeSmith v. Ellerbee*, 203 Ga. App. 65, 68-69 (416 SE2d 364) (1992) (when directed verdict at trial is inevitable, summary judgment is appropriate).

In continuing to dissent to the decisions of this Court on the above issue, I am aware that the principle of stare decisis ordinarily compels a judge of this Court to follow the decisions issued by this Court. Since it is my opinion, however, that the decisions to which I continue to dissent clearly conflict with the Supreme Court's decision in *Lau's Corp.*, 261 Ga. at 491, I do not believe stare decisis compels me to concur. "The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents." Art. VI, Sec. V, Par. III, Ga. Const. of 1983. Accordingly, I continue to dissent on this issue as long as I find clear support for my position in Supreme Court precedent. Moreover, I point out that the majority opinion, and the opinion in *Straughter* upon which it relies, fails to acknowledge a contrary line of decisions relying on *Lau's Corp.* issued by this Court which takes the exact opposite position. As I have urged in previous dissents, this Court should forthrightly address the conflict in these decisions.

For these reasons, I respectfully dissent.

DECIDED SEPTEMBER 27, 1999 —
RECONSIDERATION DISMISSED OCTOBER 21, 1999 —

*Clyatt, Clyatt & DeVaughn, Robert M. Clyatt, Carl G. Fulp III,* for appellant.

*Law Offices of Rodney M. Keys, Maurice L. King, Jr.,* for appellee.