## A97A1001. KELLEY v. PIGGLY WIGGLY SOUTHERN, INC. et al.
### (496 SE2d 732)

BEASLEY, Judge.

Mary Kelley appeals from the grant of summary judgment to all defendants in her action against Piggly Wiggly Southern, Inc., Clean-Serve, Inc., and Donna Sendra d/b/a Universal Cleaning Service. She alleged she slipped and fell in a puddle of water or other clear liquid in Piggly Wiggly's store and that Clean-Serve or Universal had applied the liquid to the floor.

The evidence favorable to Kelley shows she went to Piggly Wiggly's store between 6:00 and 6:30 in the morning to purchase groceries. As she pushed her shopping cart towards the produce department, she slipped in a puddle of liquid and fell. Kelley described the liquid as invisible from a standing position even after she arose from her fall, although she could see the liquid when she was lying on the floor. After she fell, she noticed a floor cleaning machine two or three aisles away. Kelley acknowledged she did not know whether the liquid in which she fell came from the machine or how long the liquid had been on the floor.

Universal, which subcontracted for the cleaning from Clean-Serve, used a push machine to wash the floor each night. The process started between about 11:00 p.m. and midnight, and it took three or four hours. The worker has to sweep the store, mop it with the machine, then mop it by hand to get up any water the machine left, and finally, buff the floor. The machine, furnished by Piggly Wiggly, is generally left in a room at the back of the store, but on the morning of Kelley's fall the machine was left out on an aisle and some dirty water had puddled under it.

In the cleaning process, the machine squirts out water to cover about a four- to five-foot area. It has a vacuum to retrieve the water but sometimes leaves up to a foot of water behind. Both water and cleaning agent are put into the machine at the top. The record does not show that the cleaning agent colors the water or materially alters its consistency.

Summary judgment is appropriate when the court, viewing all the evidence and drawing all reasonable inferences in a light most favorable to the respondent, concludes that the evidence does not create a triable issue as to an essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). On a motion for summary judgment under OCGA § 9-11-56, the defendant, as the moving party, may only prevail either by piercing the plaintiff's pleadings or by presenting evidence which establishes a prima facie affirmative defense. Id. A defendant who will not have the burden of proof at trial may pierce the plaintiff's pleadings by either: (1) presenting evidence which negates an essential element of the plaintiff's claims, or

(2) showing "an absence of evidence to support the [plaintiff's] case" as to any essential element. Id. at 491; *Caven v. Warehouse Home Furnishings Distrib.*, 209 Ga. App. 706 (434 SE2d 532) (1993).

"[T]he 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed." *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997).

1. The trial court erred in granting summary judgment to Clean-Serve and Sendra because Kelley presented circumstantial evidence of a connection between these appellees and the liquid in which she fell. She must of course show that a defendant's negligence caused her injuries.

The duty imposed upon an owner or occupier of land by OCGA § 51-3-1 is inapplicable to Clean-Serve and Sendra because they are independent contractors, not owners or occupiers of the premises. *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744-745 (2) (470 SE2d 270) (1996). But, the cleaners had the duty to use ordinary care in their floor cleaning and cleanup assignment. *Bell & Son v. Kidd & Roberts*, 5 Ga. App. 518, 520 (63 SE 607) (1909) (a contractor may be liable to third parties for negligent performance of the contract work); *Guthrie v. Robbins Home Improvement Co.*, 95 Ga. App. 882, 884 (2) (b) (99 SE2d 319) (1957) (contractor owes duty to invitee on premises).

Since the machine starts out with liquid cleaner and water that is squirted out, the fact that Kelley saw the machine in dirty water left by its brushes does not destroy the inference that the machine was the source of the water she slipped on after the machine was used on the floor throughout the store. Neither does the testimony that a cleaning substance was added to the water. A jury could reasonably infer that this puddle remained during the cleaning process and was not mopped up afterwards. Considering the time of day and the description of the substance, a jury could reasonably infer that the substance was not one which a customer spilled but rather was left by the cleaning person.

2. With regard to Piggly Wiggly, "in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the

plaintiff knew or, in the exercise of ordinary care, should have known." *Robinson*, supra at 748-749. Here, the inquiry under the first prong is limited to whether Piggly Wiggly had constructive knowledge of the liquid on the floor, because there was no evidence Piggly Wiggly had actual knowledge of it.[1]

Constructive knowledge can be established in one of two ways: by evidence that employees were in the immediate vicinity and easily could have noticed and removed the hazard, or by evidence that the substance had been on the floor for such a time that it would have been discovered had the proprietor exercised reasonable care in inspecting its premises. *Alterman Foods v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327) (1980), modified on other grounds, *Robinson*, supra. The first basis for constructive knowledge is foreclosed by Kelley's testimony that she did not see any employees in the vicinity of her fall. Although Kelley's later affidavit stated there were employees "a reasonable distance" from the site of her fall, this contradicts her deposition testimony that she arose after her fall and looked for employees in the area but saw none. The unexplained discrepancy is construed against her under the rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986).

To support the second basis for constructive knowledge, that the owner failed to exercise reasonable care in inspecting the premises, "the plaintiff must show that the foreign substance was on the floor for a length of time sufficient for knowledge of it to be imputed to the defendant. [Cit.] 'The length of time which must exist to show that the defendant had an opportunity to discover the defect will vary with the circumstances of each case (the nature of the business, size of the store, the number of customers, the nature of the dangerous condition and the store's location).' [Cit.]" (Punctuation omitted.) *Alterman Foods*, 246 Ga. at 623.

No one from the store inspected after the cleaning on this partic-ular morning to assure that the cleaner had completed the job prop-erly and left no water behind. In fact, the machine was left out, in the way of customers, with dirty water seeping onto the floor. There is no evidence of any inspection at all that night or early morning before Kelley's fall for water or anything else which might be a hazard to patrons. Although Kelley did not see the liquid before she fell, a per-son inspecting the floor after the cleaner completed the job would have been looking for just such a substance. It cannot be assumed

---

[1] Kelley contends for the first time on appeal that Piggly Wiggly had actual knowledge of the liquid. We will not consider arguments belatedly raised. *Clark v. Chick-Fil-A*, 214 Ga. App. 758, 759 (1) (449 SE2d 313) (1994). Moreover, there is no evidence of actual knowledge on the part of Piggly Wiggly, and Kelley's citation to the record does not support this conten-tion.

that if the patron did not see it before falling, neither would an inspector.

"The owner/occupier is not required to warrant the safety of all persons from all things, but to exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters. (Cit.) This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." *Robinson*, supra at 740.

The proprietor has not pierced the pleading by showing it fulfilled the duty imposed by OCGA § 51-3-1. Nor has it rebutted the inference that the water came from the cleaning process that was supposed to end about three hours earlier. Piggly Wiggly has not rebutted this evidence by showing a reasonable inspection and cleaning procedure.

This case differs from *Blake v. Kroger Co.*, 224 Ga. App. 140 (480 SE2d 199) (1996), because it is reasonably inferable that the water came from the cleaning machine, that it was not mopped up by the person who used the machine, and that the proprietor did not inspect for water left by the machine during the several hours between the time the cleaner left and plaintiff fell, despite knowledge that the process took large quantities of water and sometimes left some behind.

*Judgment reversed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur. Smith and Eldridge, JJ., concur specially. Andrews, C. J., and Birdsong, P. J., dissent.*

SMITH, Judge, concurring specially.

While I concur fully in the majority opinion, I write separately for two reasons: first, to describe some of the procedural history of this case on appeal, and second, to acknowledge the assistance given to this Court by the Supreme Court's opinion in *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997).

I wrote the first majority opinion in this case, in which Chief Judge Andrews, Presiding Judge Birdsong, and Senior Appellate Judge Banke concurred. Judge Ruffin concurred in the judgment only, and Judge Beasley and Judge Eldridge wrote strong dissenting opinions. After issuance of the original opinion, the Supreme Court of Georgia decided *Robinson*. In light of this decision and its significant alteration of summary judgment practice in slip-and-fall cases, I felt constrained to withdraw the original majority and join Judge Beasley's dissent. She has now recast that dissent as the new majority, adding appropriate analysis based upon *Robinson*.

As we apply the *Robinson* decision here, I believe it is also appro-

priate to note this case as a very early example of the assistance the Supreme Court's opinion gives this Court. For years, this Court and trial courts throughout Georgia have struggled to apply properly — and with justice for both plaintiffs and defendants — the principles set out by the Supreme Court in *Alterman Foods v. Ligon,* 246 Ga. 620 (272 SE2d 327) (1980), and *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). In *Robinson,* the Supreme Court has given much-needed direction through the unequivocal statement that the decision's purpose is to "lighten the load placed on plaintiffs by more recent judicial opinions."

Without *Robinson* and its modification of the *Alterman Foods* standard, this case might well have been another in the large number of slip-fall cases that have caused disagreement among members of this Court. But with the aid of *Robinson* and the clear-cut policy choice made by the Supreme Court to take a new direction in these cases, the appropriate disposition becomes clear. That will also be true in the future with the vast majority of slip-fall appeals and applications for interlocutory review.

As the appellate court judge who was reversed by the Supreme Court in *Robinson,* I welcome it. The Supreme Court, in its role as lawgiver, has resolved a long-standing controversy which this Court, as a court for the correction of errors, was unable to address. This gives me hope that this Court will soon no longer be largely defined by this single type of case and will no longer be identified first and foremost by lawyers and trial judges as the court that cannot give clear, consistent direction in slip-fall cases. These are important cases and deserve careful consideration, but I look forward to the opportunities *Robinson* affords us. The Supreme Court's decision may make it possible for us to reduce substantially the disproportionate amount of time and effort expended on these cases in the past, and to end the increasing polarization of this Court they have produced.

ELDRIDGE, Judge, concurring specially.

While I concur entirely with Judge Beasley's majority, I write specifically to address additional issues that I feel are important in this case.

On the law and facts, this case is on all fours with *Bruno's Food Stores v. Taylor,* 228 Ga. App. 439 (491 SE2d 881) (1997), in which this Court recently affirmed the trial court's denial of summary judgment to the defendant grocery store, where: (1) the cleaning contractor was using the same kind of floor cleaning machine that was owned and maintained by the owner/occupier and that also left streaks of water that had to be mopped up, and (2) the knowledge of the water was imputed to the owner/occupier, because it had not sur-

rendered control of the premises to the independent contractor. In this case, the evidence shows that the floor cleaning machine did not vacuum up all the fluid it dispensed on the floor, but left approximately a foot of liquid behind, which required either the cleaning company or Piggly Wiggly to mop up the excess water. Piggly Wiggly was aware of the manner in which the machine operated, or failed to operate, and that the excess water had to be mopped up by an individual. Further, the plaintiff did not observe any cones or warning signs that would alert patrons to the danger presented by the wet floor. The record is silent as to what the cleaning company's and the store's policies were regarding the placement of cones or signs to warn patrons of a wet floor, and whether the excess water left on the floor was mopped up only after the cleaning company was through cleaning all the areas of the store with the floor cleaning machine or after each aisle or section.

Imputed or constructive knowledge of the condition of the floor is attributed to the cleaning company since it performed the cleaning services which caused the water to be on the floor, and therefore, it is presumed to have knowledge of the condition in which it left the floor. See *Bruno's Food Stores v. Taylor*, supra; *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980); see *Little v. Liberty Savings Bank*, 191 Ga. App. 732 (382 SE2d 734) (1989). "Because the owner or occupier's duties to keep the premises and approaches safe are statutory (OCGA § 51-3-1), those duties are non-delegable even though the owner has a contract for another party to provide [cleaning services]. OCGA § 51-2-5 (4); *Confetti Atlanta v. Gray*, 202 Ga. App. 241, 244 (4) (414 SE2d 265) (1991). 'An employer is liable for the negligence of a contractor . . . if the wrongful act is the violation of a duty imposed by statute.' OCGA § 51-2-5 (4)." *Griffin v. AAA Auto Club South*, 221 Ga. App. 1, 2 (1) (470 SE2d 474) (1996); accord *Parking Co. of America v. Sucan*, 195 Ga. App. 616, 617 (1) (394 SE2d 411) (1990); *Towles v. Cox*, 181 Ga. App. 194, 196 (351 SE2d 718) (1986); *Gerald v. Ameron Auto. Centers*, 145 Ga. App. 200, 202 (2) (243 SE2d 565) (1978). Questions of fact exist for jury determination as to whether the cleaning company exercised due diligence in removing the excess liquid from the floor after going over the floor with the floor cleaning machine and in warning patrons of the danger of the wet floor by placing cones or warning signs in the appropriate areas until the excess water could be mopped up.

Piggly Wiggly, as an owner of the premises, cannot insulate itself from liability simply by hiring an independent contractor to clean its floors. If full possession and complete control of the floor is not delivered to the independent contractor, the acts of the independent contractor will be imputed to the owner of the premises. See *Bruno's Food Stores v. Taylor*, supra at 442. In this case, full possession and

control of the floor had not been delivered to the cleaning company by Piggly Wiggly. Piggly Wiggly was open to customers during the time that its floor was being cleaned, and the portion of the store in which the floor was being cleaned was not closed to customers. Both situations benefited Piggly Wiggly, as customers could shop in the entire store. Piggly Wiggly had directed the cleaning company to perform its services at times when there were fewer customers in the store, and Piggly Wiggly had actual knowledge that the floor of its store was being cleaned by an employee of the cleaning company at the time of Kelley's fall. Therefore, knowledge of the puddles of the clear liquid on the floor would be imputed to Piggly Wiggly.

Further, separate from any imputed negligence, the evidence raises independent claims of negligent acts or omissions on the part of Piggly Wiggly. As shown by the testimony of Piggly Wiggly employee Curtis Holmes, Piggly Wiggly knew its floor cleaning machine regularly left water on the floor, which had to be mopped up. A jury could reasonably infer from Holmes' testimony describing how the floor cleaning machine operated that Piggly Wiggly's floor cleaning machine was not in proper repair. Further, there was a duty on the part of Piggly Wiggly to make a reasonable inspection of the floor and either to personally put out warning cones or signs, or to ensure the cleaning company put them out in areas where the floor was wet. This duty was particularly applicable because: (1) Piggly Wiggly knew that customers would be in the store during the time its floor was being cleaned; (2) Piggly Wiggly provided shopping carts for their customers' use and it was reasonably foreseeable that the shopping carts, which may well be filled with a customer's selections, could block the customer's view of the floor directly in front of the buggy; (3) Piggly Wiggly knew its floor cleaning machine left liquid on the floor; and (4) Piggly Wiggly knew that standing water on the floor during cleaning created a danger.

Under the evidence, the defendants either (1) failed to pierce the allegations set forth by the plaintiff and show that no jury issue exists as to an essential element of the plaintiff's claims; or (2) the plaintiff came forward with evidence in rebuttal. See *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997). Slight evidence is sufficient to satisfy the plaintiff's burden of coming forward with evidence in rebuttal. Further, such evidence may include favorable inferences drawn by the court from the evidence presented. See *Stuckey Diamonds v. Jones*, 195 Ga. App. 351 (393 SE2d 706) (1990); *Mealer v. Gen. Cinema Beverages of Ga.*, 190 Ga. App. 419 (379 SE2d 192) (1989).

While the defendants raised the affirmative defense of contributory negligence, they had the burden of proof on summary judgment, just as they would at trial, to make out prima facie each essential ele-

ment. *Garrett v. NationsBank*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997); see also *Robinson v. Kroger Co.*, supra. Kelley's testimony that she was looking where she was going but was unable to see the puddle of clear liquid in which she slipped and fell from a standing position, and that the puddle blended with the light-colored tile floor, raised material issues of fact for jury determination. Kelley's testimony that she was careful to look for puddles as she continued through the store after her fall but still almost stepped in another puddle in the meat department demonstrates how difficult it was, in the exercise of ordinary care, to discover the presence of such clear liquid on the floor. See *Bruno's Food Stores v. Taylor*, supra at 445.

ANDREWS, Chief Judge, dissenting.

1. The trial court properly granted summary judgment in favor of Clean-Serve, Inc. and Donna Sendra d/b/a Universal Cleaning Service because Kelley failed to show any evidence of a connection between these defendants and the liquid in which she fell.

Clean-Serve and Sendra, as independent cleaning contractors, are not subject to the duty imposed in OCGA § 51-3-1 upon Piggly Wiggly as the owner or occupier of the premises. *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744-745 (2) (470 SE2d 270) (1996). Accordingly, to support her claim that Clean-Serve and Sendra negligently caused her injuries, Kelley was required to come forward with some evidence showing that they were responsible for the puddle of clear liquid in which she slipped and fell.

Kelley acknowledged in deposition testimony that she slipped and fell in a puddle of liquid on the floor which was clear and invisible from a standing position. She testified that she did not know where the unidentified liquid came from and that it could have been spilled by a customer. She contended in opposition to summary judgment that a floor cleaning machine used by Clean-Serve and Sendra located two or three aisles away from the site of the puddle was evidence that the puddle was negligently left on the floor by the operators of the machine. There was testimony that, although the machine emitted and then vacuumed up water as it was operated, the water used by the machine contained a "soapy like substance." Kelley testified that after she fell, she saw "dirty water" under the machine that was visible from a distance because it was "muddy" and much darker in color than the "clear" and invisible liquid in which she fell.

It is sheer speculation that the puddle of clear liquid in which Kelley slipped and fell had some connection with muddy, dirty and plainly visible water under a cleaning machine several aisles away or with soapy water that might have been emitted by the machine at some earlier time and somehow not recovered. Moreover, the only testimony presented was that the machine vacuumed up the water

as part of its normal operation.

In a negligence case, a plaintiff must show that a defendant's negligence caused the injury. "On the issue of the fact of causation, as on other issues essential to the cause of action for negligence, the plaintiff, in general, has the burden of proof. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." (Citations and punctuation omitted.) *Nelson v. Polk County Historical Society*, 216 Ga. App. 756, 757 (2) (456 SE2d 93) (1995). It was not Clean-Serve's and Sendra's burden on summary judgment to refute the machine as the source of the water. To the contrary, the defendants, who do not have the burden of proof on this issue at trial, need only point to the absence of evidence in the record sufficient to support this claim. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). To hold otherwise would amount to making not only the proprietor, but his independent contractors as well, insurers of his customer's safety. *Wilkes v. Kroger Co.*, 221 Ga. App. 113 (470 SE2d 506) (1996). Because the evidence created only the mere possibility that Clean-Serve and Sendra caused Kelley's injury, there was an absence of evidence sufficient to withstand a motion for a directed verdict at trial or to create a disputed issue of material fact on summary judgment. OCGA §§ 9-11-50 (a); 9-11-56 (c); *Lau's Corp.*, supra. Accordingly, the trial court did not err in granting summary judgment with respect to Clean-Serve and Sendra.

2. As to the claim against the proprietor based on the duty imposed under OCGA § 51-3-1, the trial court properly granted summary judgment in favor of Piggly Wiggly Southern, Inc. because there was an absence of evidence showing that Piggly Wiggly had actual or constructive knowledge of the puddle.

To recover, Kelley was required to show that Piggly Wiggly had actual or constructive knowledge of the foreign substance. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980), modified by *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997). Although *Robinson* modified the second prong of the *Alterman Foods* analysis dealing with proof of the plaintiff's knowledge of the hazard, it left intact the first prong of *Alterman Foods* concerning the defendant's knowledge. Since there is no evidence that Piggly Wiggly had actual knowledge of the liquid on the floor, this case hinges on whether Piggly Wiggly had constructive knowledge of the puddle.

Under *Alterman Foods*, the proprietor's constructive knowledge may be established by evidence that an employee of the proprietor was in the immediate vicinity of the hazard and could easily have seen and removed it, or by evidence that the hazard had been on the floor for a period of time sufficient to have been discovered by a reasonable inspection of the premises. Id. at 622-623. As the majority states, there is no basis for concluding that an employee of Piggly Wiggly was near the puddle and could have easily seen and removed it. Accordingly, the issue in this case is whether there was evidence sufficient to show that Piggly Wiggly had constructive knowledge on the basis that the puddle had been on the floor prior to the slip and fall long enough that Piggly Wiggly would have discovered it by a reasonable inspection of the premises.

Kelley testified that she had no knowledge of how long the liquid had been on the floor. She saw no footprints or buggy tracks through the puddle, no drying of the edges, or any other indications as to how long the puddle had been on the floor. As set forth in Division 1, supra, there is no reasonable basis for concluding that the puddle was left on the floor for an extended length of time as a result of a prior floor cleaning operation.

Accordingly, Piggly Wiggly was entitled to summary judgment by "point[ing] out the absence of any evidence in the record showing that the foreign substance had been on the premises for a period of time sufficient to have been discovered by a reasonable inspection of the premises." *Johnson v. Autozone*, 219 Ga. App. 390, 394 (465 SE2d 463) (1995). "[L]iability based on constructive knowledge requires proof of the length of time the dangerous condition was allowed to exist. Since the record affirmatively establishes that plaintiff cannot show that the spot was on the floor long enough for reasonable cleaning procedures to have eliminated it, [she] must suffer summary judgment in defendant's favor." (Citations and punctuation omitted.) *Blake v. Kroger Co.*, 224 Ga. App. 140, 147 (480 SE2d 199) (1996) (Beasley, J., concurring specially); *Banks v. Colonial Stores*, 117 Ga. App. 581, 585 (161 SE2d 366) (1968).

Piggly Wiggly had no burden on summary judgment to pierce the pleadings by first showing that it complied with the duty imposed under OCGA § 51-3-1. To the contrary, under *Lau's Corp.*, Piggly Wiggly had no initial burden to produce evidence to negate Kelley's constructive knowledge claim but could discharge its burden on summary judgment by showing there was no evidence in the record to support that claim. For Kelley to establish a triable issue, she had the burden of showing that the puddle was on the floor for a length of time sufficient for knowledge of it to be imputed to Piggly Wiggly

before Piggly Wiggly had any obligation to show adherence to reasonable inspection procedures. *Hartley v. Macon Bacon Tune*, 227 Ga. App. 679, 685 (490 SE2d 403) (1997). In the absence of evidence showing how long the puddle had been on the floor, the trial court properly granted summary judgment in favor of Piggly Wiggly.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED DECEMBER 19, 1997 —
RECONSIDERATION DENIED FEBRUARY 11, 1998 ▮▮▮▮▮▮▮

*Beauchamp & Associates, William Eckhardt*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Robert C. Semler, Albert M. Yates III, James R. Doyle II, Cannon, Meyer Von Bremen & Meier, Michael S. Meyer Von Bremen, Hodges, Erwin, Hedrick & Coleman, David W. Orlowski*, for appellees.