A02A1620. R & S FARMS, INC. v. BUTLER et al.
(575 SE2d 644)

RUFFIN, Presiding Judge.
While shopping at a Kroger store, Charles E. Butler slipped and fell on what he suspected was the white of a broken egg. Butler and his wife sued Kroger and R & S Farms, Inc. d/b/a Master Care Floor Service ("Master Care"), which provided janitorial services at the site. Master Care moved for summary judgment, which the trial

court denied. The trial court certified its order for immediate review. We granted Master Care's application for interlocutory appeal, and this appeal followed. For reasons that follow, we reverse.

In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment.[1] So viewed, the record shows that Butler went to a Kroger store at 12:40 a.m. with his two daughters. They separated in the store to shop. Butler was looking for his daughters when he slipped and fell in the dairy aisle. Before leaving the store Butler had handwritten the following statement: "Fell on eggs that had been broken. I did not see egg [yolk] on floor. [Slipped] and fell when I [stepped] in it." In his deposition, Butler testified that he had slipped on "a clear substance on the floor." According to Butler, the clear substance was egg white although he did not recall seeing any eggshells in the area. Butler testified that the egg white was separated as if the egg yolk had either been pushed or swept to the side. Butler admitted, however, that the cause of his fall was not related to any water or cleaning solutions left on the floor and was certain that it was an invisible patch of egg white located near the dairy case that caused him to fall. Butler said that he did not see anyone sweeping, scrubbing, or buffing the floor.

Camille Watts, the Kroger customer service representative, testified that after she overheard Butler informing a cashier that he had just fallen in the dairy section, she immediately accompanied Butler to that area. When asked to describe what she saw when she got there, Watts testified, "I saw yellow egg yolk." Watts remembered Butler "telling me that he had slipped in the egg, in the yolk of the egg." Watts approached the "cleaning guy," later determined to be Larry Harden of Master Care, who was in the back aisle in front of the meat department. Watts testified that after she walked over to him, "I asked him if he saw the egg on the floor and he indicated that he did see the egg on the floor and my question was why didn't you let someone know." According to Watts, Harden responded, "Well, you know, that's a Kroger problem." Watts was asked, "just by looking at it, did it look like any attempt had been made to clean it up?" She responded, "it looked like no attempt. All I saw was the egg yolk, yellow." She described an area "about six by five inches" that had "a footprint in the egg yolk." In her written report made minutes after the event, Watts noted, "Larry [Harden] told me he saw broken egg on the floor, that he had not gotten it cleaned up yet." Although acknowledging that she had no supervisory role over Harden, Watts

---

[1] *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996).

thought that if Harden had seen egg on the floor then he should have cleaned it up, based on "common sense." Almost immediately after the incident, a Kroger employee cleaned up the egg residue.

After discovery, Master Care moved for summary judgment on the basis that it owed no duty to Butler. Although the trial court determined that Master Care owed no duty as an owner or occupier of the premises, it found that a duty arose under Kroger's contract with Master Care. Specifically, the trial court found that "Master Care and its employees have a duty under the contract with Kroger to the patrons of Kroger to remove a foreign substance from the floor once they have seen it. Master Care's duties under the contract clearly and specifically work to the benefit of the patrons of Kroger." The trial court's order continued,

> Here, there is evidence, if believed by the jury, showing that Master Care's employee had prior direct knowledge of the very hazard causing Plaintiff's fall. On the facts before the Court, a jury could conclude Master Care's employee failed to remove a substance known to him and was negligent thus causing injury to the Plaintiff.

In its sole claim of error, Master Care contends that the trial court erred in deciding as a matter of law that Master Care, an independent contractor, owed a legal duty to Butler to remove a foreign substance from the floor based on the service contract between Kroger and Master Care. We agree that Master Care did not owe a duty to Butler under the service contract. Nor did the evidence authorize a finding of malfeasance in the performance of the contract that would preclude a grant of summary judgment to Master Care.

A business owner owes a nondelegable duty to its invitees and may not insulate itself from liability by hiring an independent contractor.[2] And "[t]he duty imposed upon an owner or occupier of land by OCGA § 51-3-1 is inapplicable to an independent contractor."[3] Even so, when the law imposes a duty to the public, an independent contractor may contractually assume such duty, so that a breach of the contractual duties may give rise to damages for personal injury.[4]

> In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it

[2] See *Kroger Co. v. Strickland*, 248 Ga. App. 613, 614 (1) (a) (548 SE2d 375) (2001); *Bruno's Food Stores v. Taylor*, 228 Ga. App. 439, 442 (1) (491 SE2d 881) (1997) (physical precedent only).

[3] *Maddox v. Cumberland Distrib. Svcs.*, 236 Ga. App. 170, 171 (1) (511 SE2d 270) (1999).

[4] See *Satilla Community Svc. Bd. v. Satilla Health Svcs.*, 251 Ga. App. 881, 885 (1) (b) (555 SE2d 188) (2001).

was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. It must appear that both parties to the contract intended that the third person should be the beneficiary.[5]

Or, stated a slightly different way,

in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him *from physical injury*.[6]

The janitorial services contract executed between Kroger and Master Care does not satisfy those requirements. Nowhere does the contract specify or even suggest that Kroger and Master Care intended to protect third parties from physical injury. Instead, under the eleven-page contract, Master Care agreed to perform specified cleaning services, between the hours of 11:00 p.m. and 7:00 a.m., seven nights per week. These duties included sweeping, scraping, scrubbing, rinsing the floor, using a high speed buffer, adding floor finish when needed, as well as conducting certain scheduled, periodic cleaning of the restrooms, break room, upstairs offices, and other store areas.[7] Master Care was required to furnish its own equipment and cleaning supplies. The contract further provided: "Contractor shall not be subject to direction by Kroger or its employees in the manner of performing said work except insofar as the manner which is specified in this contract and he shall do such work as an independent contractor."

We find nothing in the agreement between Kroger and Master Care that shows their mutual intent to confer a direct benefit upon third parties.[8] The Butlers argue that the janitorial services contract obligated the employees of Master Care to adhere to Kroger rules and regulations regarding in-store conduct, and these rules required

---

[5] (Citations and punctuation omitted.) *Donalson v. Coca-Cola Co.*, 164 Ga. App. 712, 713 (2) (298 SE2d 25) (1982).

[6] (Punctuation omitted; emphasis supplied.) *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 117 (4) (537 SE2d 345) (2000).

[7] The contract required Master Care to insure that "prior to servicing the store, caution signs will be in place in all areas where water would create hazardous situations for customers and employees." But, the record contains no evidence that a Master Care employee was scrubbing the area of Butler's fall or had placed any water on the floor to create a hazard there.

[8] See *Anderson*, supra.

Kroger employees to clean up miscellaneous spills.[9] But the contractual duty runs directly from Master Care to Kroger. It is Kroger, on the other hand, that has a nondelegable duty to keep its premises in a reasonably safe condition for its invitees. Under the janitorial services contract, Master Care did not agree to undertake similar obligations toward Kroger's customers. Furthermore, this court has found no independent duty on the part of a similar janitorial service "to inspect the premises of the occupier for the safety of the occupier's invitees."[10] We find, therefore, that Master Care neither owed nor assumed any duty to Butler to clean the egg spill or to warn him of the danger.[11]

We recognize that an independent contractor may be liable to third parties for negligent performance of contract work.[12] In *Kelley v. Piggly Wiggly Southern*, this Court held that summary judgment to a cleaning service was precluded by evidence that while cleaning the floor, the independent contractor may have left water or cleaning fluid in the area where the plaintiff fell.[13] But here the record does not show possibly negligent performance, but rather no performance at all — that a Master Care employee saw a broken egg on the floor in the dairy section and did nothing about it because he thought it was "a Kroger problem."[14]

The Butlers argue that the evidence would nevertheless authorize a recovery on theories of misfeasance and voluntary undertaking[15] because "Master Care's employee on duty at the time of this incident, moved or removed the eggshells and egg yolk away from the egg white, thereby making the broken egg even less visible and more dangerous." The Butlers' misfeasance and voluntary undertaking theories both rest upon an assumption that Harden must have moved the shell and yolk because he was the person closest to the dairy area and he admitted seeing the broken egg. Although the Butlers contend that it may be inferred from the absence of the eggshell in the spillage that Master Care's employee had made an attempt to remove the hazard, here, as in *Boss v. Food Giant*,[16] we cannot agree that any such inference reasonably arises from the evidence. "[A]n inference cannot be based upon evidence which is too

---

[9] The contract provides: "All employees of [Master Care] shall be subject to all the same Kroger Store Rules and Regulations as Kroger employees pertaining to conduct while on the premises."

[10] *Greene v. Piedmont Janitorial Svcs.*, 220 Ga. App. 743, 744 (2) (470 SE2d 270) (1996).

[11] See *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994).

[12] *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508, 509 (1) (496 SE2d 732) (1998).

[13] Id.

[14] See *Greene*, supra (an agent is not ordinarily liable for mere nonfeasance).

[15] See *Kelley*, supra at 509.

[16] 193 Ga. App. 434, 435 (388 SE2d 37) (1989).

uncertain or speculative or which raises merely a conjecture or possibility."[17] And, "[i]n passing on a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists."[18]

The evidence shows that at least four Kroger employees were working in the store around the time that Butler fell, including the night grocery manager, who was responsible for the dairy area, two night stockers, and Watts, who was "all over the store." Butler's daughters were also in the store. Given the opportunity for others to pass by, or through, the site of the egg spillage, the circumstantial evidence does not demand a finding that Harden was the one who disturbed the spill. In direct contradiction to the Butlers' speculation that the Master Care worker might have removed the eggshell or moved the egg spillage is the direct evidence that Harden did nothing about the spill because he thought it was "a Kroger problem."

Finally, the Butlers argue that nonperformance of a contractual liability may give rise to a tort action if the failure to perform creates an unreasonable risk of harm to others. In cases such as *Lenny's, Inc. v. Allied Sign Erectors*,[19] cited by the Butlers, and *Gillis v. Orkin Exterminating Co.*,[20] evidence showing nonperformance of a contract was sufficient to establish a cause of action in tort. However, in these cases the nonperformance created additional risk to the plaintiff, which had relied upon the defendant's representation that it had performed the contract. In *Lenny's*, for instance, the evidence showed that defendant's agent intentionally recommended an inadequate fire system while representing that it was completely suitable.[21] Here, the Butlers cannot show that nonperformance by Master Care of its store maintenance contract with Kroger created additional risk to Butler. Accordingly, Master Care was entitled to summary judgment.

*Judgment reversed. Barnes, J., and Pope, Senior Appellate Judge, concur.*

DECIDED OCTOBER 29, 2002 —
RECONSIDERATION DENIED DECEMBER 10, 2002.

*Freeman, Mathis & Gary, Theodore Freeman, Andrea S. Hirsch*, for appellant.

---

[17] *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1) (a) (512 SE2d 2) (1999).
[18] Id.
[19] 170 Ga. App. 706 (318 SE2d 140) (1984).
[20] 172 Ga. App. 507 (323 SE2d 695) (1984).
[21] *Lenny's*, supra at 709 (3).

*O'Neal, Brown & Clark, Philip M. Brown, Jarome E. Gautreaux,* for appellees.