**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 14, 2014**

# In the Court of Appeals of Georgia

A14A1006. DAVIDSON et al. v. METICULOUSLY CLEAN
    SWEEPERS, LLC.

BRANCH, Judge.

In January 2011, after a winter storm, plaintiff Nancy Davidson fell outside a Dollar Tree store in a Macon shopping center owned by three corporate entities (collectively, "Rivergate"). Davidson and her husband sued Rivergate; its property management company; Dollar Tree; the Dollar Tree manager; and Meticulously Clean Sweepers, LLC ("MCS"), an independent contractor which had applied a de-icing mixture to the area on the night before Davidson fell. After all defendants except MCS settled with the Davidsons, MCS moved for summary judgment, which was granted on grounds including that the Davidsons were not third-party beneficiaries of the contract between Rivergate and MCS and that there was no evidence that MCS

had been negligent. On appeal, the Davidsons argue that the grant of summary judgment was error because questions of material fact remain as to whether MCS was negligent in its application of the de-icing mixture, which it had undertaken to do in its contract with Rivergate; whether that negligence was a proximate cause of Davidson's injury, and whether MCS had superior knowledge of the hazard posed by ice in the area where Davidson fell. We reject these contentions and therefore affirm.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . . [T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991) (citations omitted).

Viewed in favor of the Davidsons, the record shows that in February 2010, Rivergate entered into a written contract with MCS to provide sweeping services, including the "sweeping and blowing of all trash, leaves and other matter throughout the front and rear parts" of the shopping center, "7 days a week[.]" The contract

2

specified that "[n]othing" in the contract "shall be deemed to establish any partnership, joint venture or agency relationship between the parties other than that of an independent contractor performing the services expressly provided for herein," that each party "shall have no authority to bind [the other] or its affiliates with respect to third parties," and that "[n]o third parties . . . are intended to, nor shall they be deemed to have a right to benefit from, or seek to enforce, any of the provisions" of the contract. For an additional charge, MCS also agreed to "de-ice" the parking lot and sidewalks.

As a winter storm approached in January 2011, Rivergate asked MCS to de-ice the premises. MCS performed de-icing services on January 9, 11, 12, and 13. The storm arrived in the area on January 10. At around 10:30 p.m. on the evening of January 11, the owners of MCS, Mazahir Ataelsid and Ali Pruitt, went to the shopping center to perform both sweeping and de-icing services. As Ataelsid followed behind him in the company truck, which contained bags of de-icing salt and sand, Pruitt applied at least three to five bags of a mixture of these ingredients to the parking lot and the sidewalks.[1] Pruitt applied the mixture by hand from a five-gallon bucket he carried, returning several times to the truck to refill his bucket from the

---

[1] Pruitt was not located and gave no evidence or testimony in the case.

bags of salt and sand. Ataelsid testified that as Pruitt did his work, "[i]t was beginning to flurry, so there wasn't like an accumulation here and an accumulation here. . . . I didn't look at the shopping center and say it was all white." Ataelsid also testified that she saw "not much" snow on the ramp from the parking lot to the sidewalk in front of the Dollar Tree and that "[t]here was no ice at all" in the area.

On the next morning, January 12, 2011, Davidson drove to the shopping center with her one-year-old grandson. As she got out of her car, she saw that the parking lot surface was "clear" and that "everything had dried up." Before crossing a traffic lane in front of the stores, Davidson picked up her grandson in order to carry him across the lane and onto a small paved ramp leading from the parking lot surface and running parallel to the sidewalk in front of the Dollar Tree. As she did so, Davidson noticed a "little puddle of water" along the curb of the sidewalk at the beginning of the ramp, which she stepped to avoid. According to Davidson, the puddle "did not look like ice." As she walked around the puddle and stepped onto the ramp, she fell, injuring her right leg. Davidson interpreted photographs of the area of her fall taken later that day as showing the presence of black ice. She also testified that the ice could not "be reasonably seen even by somebody who [was] being careful and watching where they [were] going."

4

In October 2012, the Davidsons sued Rivergate, the property management company, Dollar Tree, the manager of Dollar Tree, and MCS for negligence. On May 17, 2013, plaintiffs settled with and moved to dismiss with prejudice their claims against Rivergate, the property management company, Dollar Tree, and the manager. After the trial court granted the motion, the case was transferred from Bibb County to Gwinnett County, where MCS, the sole remaining defendant, resided. MCS then moved for summary judgment, which the trial court granted on the grounds that (1) Davidson was not a third-party beneficiary of the de-icing contract between Rivergate and MCS; (2) no evidence showed that MCS breached any duty of ordinary care; and (3) no evidence showed that MCS had superior knowledge of the black ice on which Davidson fell. This appeal followed.

1. The Davidsons argue that MCS can be liable to them for any negligent performance of MCS's contract with Rivergate. We disagree.

Although a business owner owes a nondelegable duty of ordinary care to its invitees,[2] "the duty [thus] imposed upon an owner or occupier of land . . . is

---

[2] See OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

inapplicable to an independent contractor." *Maddox v. Cumberland Distrib. Svcs.*, 236 Ga. App. 170, 171 (1) (511 SE2d 270) (1999) (citations omitted). The Supreme Court of Georgia has held that in personal injury cases against independent contractors, "'an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury.'" *Anderson v. Atlanta Committee for the Olympic Games*, 273 Ga. 113, 117-118 (4) (537 SE2d 345) (2000), quoting *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994). And this Court has held, following *Anderson*, that a trial court erred in denying summary judgment to a janitorial service when the contract between the service and the owner of the supermarket in which a plaintiff fell contained "nothing . . . that shows [the parties'] mutual intent to confer a direct benefit upon third parties." *R & S Farms v. Butler*, 258 Ga. App. 784, 787 (575 SE2d 644) (2002).

The contract between MCS and Rivergate is clear that neither party to it intended to allow any third party to be a beneficiary of the services provided pursuant to that contract by MCS to Rivergate. Indeed, the contract expressly provided that "[n]o third parties . . . are intended to, nor shall they be deemed to have a right to

6

benefit from, or seek to enforce, any of the provisions" of the contract. In the absence of any other evidence showing that these parties intended to confer any benefit arising from the contract between MCS and Rivergate upon any third party, the trial court did not err when it concluded that the Davidsons could not have been third-party beneficiaries of that contract. *R & S Farms*, 258 Ga. App. at 787-788 (reversing denial of summary judgment to janitorial service on plaintiff's tort claim where no evidence showed that the contracting parties intended to create third-party beneficiaries to the contract); *Anderson*, 273 Ga. at 117-118 (4) (affirming grant of summary judgment to security company where its contracts with property owner showed "no intent" to confer any benefit on visitors to the property).

2. The Davidsons also argue that the trial court erred in its conclusion that no question of fact remains as to whether MCS negligently treated the area where Mrs. Davidson fell. We disagree.

In light of our holding in Division 1, the Davidsons must establish a viable cause of action in tort, "independent of" the contract between Rivergate and MCS, in order to avoid summary judgment. *Westbrook v. M & M Supermarkets*, 203 Ga. App. 345, 346 (2) (416 SE2d 857) (1992) (citation omitted). Specifically, the Davidsons must show that MCS owed them a duty of ordinary care as to

responsibilities undertaken in the contract with Rivergate. See, e.g., *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508, 509 (1) (496 SE2d 732) (1997) (independent contractor could be liable to a third party for a failure to use ordinary care in executing its cleaning duties undertaken by contract).

OCGA § 51-1-11 (a) provides in relevant part that "if [a] tort results from the violation of a duty which is itself the consequence of a contract, the right of action is *confined to the parties and those in privity* to that contract, *except in cases where the party would have a right of action* for the injury done *independently of the contract*[.]" (Emphasis supplied.) On the question whether a party has "a right of action for [an] injury done independently of [a] contract," id., the Supreme Court of Georgia has adopted § 324A of the Restatement (Second) of Torts, which provides:

> "One who undertakes, gratuitously or for consideration, to render *services to another which he should recognize as necessary for the protection* of a third person or his things, is subject to liability to the third person for *physical harm resulting from his failure to exercise reasonable care to protect his undertaking*, *if* (a) his failure to exercise reasonable care increases the risk of such harm, *or* (b) he has undertaken to perform a duty owed by the other to the third person, *or* (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

8

*Huggins v. Aetna Cas. Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980), quoting Restatement (Second) of Torts § 324A (emphasis supplied).

Assuming for purposes of this appeal that MCS should have recognized that its de-icing services might, under some circumstances, be "necessary for the protection" of visitors to the Rivergate shopping center, the first question is whether there was some evidence authorizing an inference that MCS failed to exercise "reasonable care" in performing its de-icing services. Restatement (Second) of Torts § 324A. Only if MCS was thus negligent would we consider whether (a) this negligence increased the risk of harm at the site, (b) whether MCS's performance was to be substituted completely for that of Rivergate,[3] or (c) whether Mrs. Davidson was injured because she or Rivergate actually relied on MCS to remediate whatever snow or ice condition existed there. See id.; *Taylor v. AmericasMart Real Estate*, 287 Ga. App. 555, 559-560 (1) (b) (651 SE2d 754) (2007) (describing the possible application of subparagraphs (a), (b) and (c) of § 324A to a plaintiff's action against a janitorial company).

---

[3] "The official comment [to § 324A] limits the application of subparagraph (b) to those situations where the alleged tortfeasor's performance is to be substituted completely for that of the party on whose behalf the undertaking is carried out." *Huggins v. Standard Fire Ins. Co.*, 166 Ga. App. 441, 442 (304 SE2d 397) (1983) (citation omitted).

The only direct evidence concerning MCS's activities at the site was that MCS, on the night before Mrs. Davidson's accident, had spread some of the de-icing mixture in the area where she fell the next morning. Although the Davidsons assert on appeal that MCS "contributed to creating the hazard by affecting the melting and freezing process in the location where the black ice occurred," the Davidsons have provided no evidence tending to prove how any act or omission of MCS "affected" that location, or that MCS somehow failed to exercise reasonable care in performing its de-icing services. Though the Davidsons would have us infer MCS's negligence merely from evidence of Mrs. Davidson's fall in an area MCS treated the night before, "[p]roof of nothing more than the occurrence of the fall is insufficient" to show that a person bound to exercise reasonable care as to premises, whether a landowner or an independent contractor, has not done so. *Weldon v. Del Taco Corp.*, 194 Ga. App. 174 (390 SE2d 87) (1990) (citations and punctuation omitted).

Nor does the mere existence of black ice at the spot where Mrs. Davidson fell prove that MCS was negligent in its exercise of its de-icing duties the night before. The Davidsons cite *Speaks v. Rouse Co. of Ga.*, 172 Ga. App. 9 (321 SE2d 774) (1984), for the proposition that "the presence of salt and sand on clear streets might have contributed to a more unstable situation" in the area where that plaintiff fell on

10

ice that formed on black asphalt. Id. at 10. In that case, we merely noted this proposition as "arguable," however, and went on to conclude that when there was "no affirmative evidence" that the property owners had "performed any act to make the presence of ice or snow more dangerous than it was in its state of accumulation," and when the plaintiff must have been "aware of the presence of water and the fact that the water could freeze," summary judgment was properly granted to the property owner. Id. at 10-11. Likewise, the Davidsons have not provided any evidence that MCS's mixture of sand and salt was improperly formulated or that MCS applied an inadequate amount of that mixture, with the result that summary judgment in favor of MCS was proper.

Because the Davidsons failed to produce sufficient evidence of a lack of reasonable care by MCS, the Davidsons cannot show that MCS was negligent in its de-icing operations, with the result that we need not reach the questions posed by subsections (a), (b), and (c) of Section 324A of the Second Restatement. It follows that the trial court did not err when it granted summary judgment to MCS on the Davidsons' claims. *Taylor*, 287 Ga. App. at 559-560 (1) (b) (affirming grant of summary judgment to janitorial company when evidence did not show that the company was negligent, with the result that § 324A did not apply).

11

3. Because we conclude that the Davidsons were not third party beneficiaries of the contract between MCS and Rivergate, and because there is no evidence to authorize a conclusion that MCS was negligent when it treated the location where Mrs. Davidson fell, we need not consider whether MCS had equal or superior knowledge of any hazard there or whether any of its acts or omissions were a contributing proximate cause of the accident.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.