**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2019**

# In the Court of Appeals of Georgia

A18A1702. SIMMONS et al. v. UNIVERSAL PROTECTION
  SERVICES, LLC et al.

MARKLE, Judge.

Mr. and Mrs. Matthew and Donna Simmons (the "Simmonses") appeal from the State Court of Fulton County's grant of summary judgment in favor of Redredra Cody ("Cody") and Universal Protection Service, LLC ("UPS") (collectively the "defendants"). On appeal, the Simmons argue that the trial court erred in granting summary judgment to the defendants because they were negligent in creating and maintaining a tripping hazard that caused Donna Simmons to fall and break her hip. We affirm the trial court's ruling.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). Our

review of a trial court's ruling on a motion for summary judgment is de novo, and we review the evidence, and all reasonable inferences, in the light most favorable to the nonmovant. *Green v. Raw Deal, Inc.*, 290 Ga. App. 464, 465 (659 SE2d 856) (2008).

So viewed, the evidence shows that the Simmons went to AmericasMart on January 2, 2015, to purchase a gift for a friend. As they entered the Mart, they proceeded to the second floor guest registration counter to get their security badges. They then proceeded to the security area, where they were required to show their badges to the security officer. As Donna Simmons rounded the corner to go through the security checkpoint, her shoe caught the edge of a rubber mat that was under the checkpoint table and she fell. She immediately noticed pain in her left hip. She stated she never saw the mat until after she fell. In her deposition, Donna Simmons was shown a photograph of the mat taken by her husband after her fall, and she identified that the mat was curled up on the edges. Following the accident, Donna Simmons underwent hip replacement surgery, and physical therapy. As of December 2015, Donna Simmons's medical expenses exceeded $100,000.

Approximately one year prior to the accident, UPS entered into a contract with AMC, Inc. ("AMC") to provide security services. Exhibit A of the agreement, entitled "Statement of Work," provides that UPS is "to provide trained security protection

2

services for the protection of all persons and personal and real property," and to "[e]nsure that prompt action is taken to prevent or minimize losses, accidents, fires, property damage, safety hazards, and security incidents." The contract also specifies that UPS is an independent contractor.

Officer Cody was employed by UPS as a security officer and was working the desk the day of the accident. She stated in her deposition that the security checkpoint consisted of a table and chair, which AMC would sometimes move around during a show, and a black floor mat. Officer Cody stated that she was standing behind the table and to the side of it when Donna Simmons approached the security checkpoint, and she noticed Donna Simmons walking with a limp and dragging her foot. Part of the mat was close to the table and part was hanging out from under it. Cody did not actually see Donna Simmons trip on the mat, but she saw her falling to the ground.

The Simmons filed suit against AMC, Inc., the corporation responsible for managing AmericasMart, stating claims for respondeat superior, negligence, and negligent failure to keep the premises safe for business invitees pursuant to OCGA § 51-3-1.[1] The Simmons also filed a related action against Cody individually and as

---

[1] AMC, Inc. filed a third-party complaint against UPS, asserting a contractual indemnity claim. The trial court granted summary judgment to UPS and against AMC, which is not part of this appeal.

3

an employee of UPS, which was later consolidated with the pending action against AMC.

UPS and Cody filed a motion for summary judgment, arguing, generally, that they are not the owners or occupiers of AmericasMart, and therefore, they owed no duty to the Simmons; the Simmons do not have standing to bring a claim under the contract between AMC and UPS because they are not third-party beneficiaries of the contract; and that no facts support AMC's claim for indemnification. AMC did not move for summary judgment. The trial court granted UPS and Cody's motion, finding that, as independent contractors, Cody and UPS did not owe the Simmons any duty because the Simmons were invitees of AMC, and UPS did not have control over the mat or its placement. It also found that the Simmons could not hold Cody and UPS liable under the contract between AMC and UPS based on a third-party beneficiary theory.[2] This appeal followed.

1. The Simmons argue that, even though UPS did not own the premises where Donna Simmons's injury occurred, UPS nevertheless owed her and other invitees a duty of care because it undertook an express contractual duty to keep the premises

---

[2] The trial court also found that UPS had no duty to indemnify AMC. AMC has not appealed this ruling.

safe for invitees. Thus, Donna Simmons was a third-party beneficiary under the contract and can maintain an action against UPS and Cody. We disagree and conclude that Cody and UPS owed no duty to Donna Simmons.

As a general rule,

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

OCGA § 51-3-1. We have explained that the business owner's duty to its invitees is "nondelegable." (Citation and punctuation omitted.) *R & S Farms, Inc. v. Butler*, 258 Ga. App. 784, 786 (575 SE2d 644) (2002). The owner cannot insulate itself from liability by hiring an independent contractor. Id. Further, the duty imposed upon an owner or occupier of land by OCGA § 51-3-1 is inapplicable to an independent contractor." In this case, there is no evidence in the record that either UPS or Cody owned or occupied the AmericasMart where Donna Simmons fell. Likewise, there is no evidence in the record that the Simmons were invitees of either UPS or Cody; rather, they were the invitees of AMC. Thus, OCGA § 51-3-1 imposes no statutory

5

duty upon UPS or Cody to inspect the premises to keep it safe for invitees, such as the Simmons. Id. at 786.

In addition, the contract between UPS and AMC did not create a duty because it was not intended to protect the Simmons as third-party beneficiaries.

> In order for a third party to have standing to enforce a contract it must clearly appear from the contract that it was intended for [her] benefit. The mere fact that [s]he would benefit from performance of the agreement is not alone sufficient. It must appear that both parties to the contract intended that the third person should be the beneficiary. Or, stated a slightly different way, in personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect [her] *from physical injury*.

(Citations and punctuation omitted; emphasis in original.) *R & S Farms, Inc.*, 258 Ga. App. at 786-787; see also *Davidson v. Meticulously Clean Sweepers, LLC*, 329 Ga. App 640, 643 (1) (765 SE2d 783) (2014).

The Simmons rely on the following language in the contract to establish their status as intended beneficiaries:

> The contractor agrees to provide trained security protection services for the protection of all persons. . . [t]he contractor will be responsible for

6

the following: [A]ccess control of persons . . . [I]dentifying and reporting security and safety violations. . . [E]nsure that prompt action is taken to prevent or minimize losses, accidents, fires, property damages, safety hazards, and security incidents. We are not persuaded.

The cardinal rule of contract construction is to ascertain the parties' intent and where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties. Further, to determine the intent of the parties, all the contract terms must be considered together in arriving at the construction of any part, and a construction upholding the contract in whole and every part is preferred. Absent an ambiguity that cannot be resolved by the rules of construction, the interpretation of contractual terms is a question of law for the court.

(Citations and punctuation omitted.) *Calhoun, GA NG, LLC v. Century Bank of Georgia*, 320 Ga. App. 472, 474-475 (1) (740 SE2d 210) (2013). The intended purpose of the contract, when considered in its entirety, reveals it is a contract for the provision of *security* services. The first page of the contract indicates UPS agreed to provide security protection services to all people and property at AmericasMart for the benefit of AMC and to protect AMC from losses and liabilities. This is evident by the language of the contract indicating UPS agrees to "[e]nsure that prompt action is taken to prevent or minimize losses, accidents, fires, property damages, safety

7

hazards, and security incidents." And even though the contract references the term "accidents," a reading of the entire contract reveals the intent of the parties was for UPS to protect AMC from losses resulting from any such accidents, and not a third party. Further, the contract addresses training of UPS personnel on arrest, search and seizure, and the control, detection, and reporting of fires. The contract limits UPS personnel's ability to make arrests or detentions without the express consent or written instruction from AMC, and further provides that UPS will provide to its security officers pepper gas canisters and holders, handcuffs with carrying case, and duty belts.

Moreover, AMC and UPS created a set of post orders for post 72, where Cody was assigned the day of the accident. The post order states that Cody's responsibility was to ensure everyone entering the gate was authorized to enter the building and had the proper credentials. However, the post order created no obligation for her to inspect or warn invitees of AmericasMart about the condition of the premises. As such, the contract language reveals that the parties intended for UPS to provide security related services to AMC at AMC's property.

Finally, the Simmons argue the trial court erred in relying on *Taylor v. AmericasMart Real Estate, LLC* , 287 Ga. App. 555 (651 SE2d 754) (2007), in

8

finding the contract at issue is primarily for security protection services and not for the protection of third parties from physical injury. They argue the case of *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880 (524 SE2d 524) (1999) (physical precedent only) is more instructive on the issue of how the contract language should be interpreted and contend that the contract was intended to protect them as third-party beneficiaries. However, the Simmons's reliance on *FPI Atlanta* is misplaced. In *FPI Atlanta*, the Court held a tenant could be a potential third-party beneficiary under the contract to provide unarmed security services where the tenant was injured by the independent contractor's negligent performance of its contracted services. Id. at 888 (5) (b). In so finding, the Court noted that because the contract expressly excluded and limited liability only as to property, it did not expressly exclude or limit liability for personal injury. Id. at 888 (5) (b). Instead, under the written contract, the independent contractor could be liable to the tenant, as a third-party beneficiary, for personal injury resulting from the contractor's failure to perform its specific contractual duty to inspect and report suspicious conduct to the police. Id. Here, neither UPS nor Cody contractually promised to inspect the premises or warn others of a tripping hazard, such as the mat. Nor is there any express language in the contract indicating an intent to create third-party beneficiaries to the contract. *FPI Atlanta*,

240 Ga. App. at 887-888 (b). Thus, the Simmons cannot hold Cody or UPS liable under a third-party beneficiary theory.

In sum, the Simmons's argument that they are third-party beneficiaries of the contract fails because UPS had no contractual duty to keep Donna Simmons safe from the injury she sustained, nor is there any evidence that UPS contracted with AMC to perform a direct benefit to protect invitees from physical injury. As such, the Simmons do not have standing as third-party beneficiaries to rely on the contract between AMC and UPS. Accordingly, summary judgment was appropriate as to these issues.

2. The Simmons also argue that Cody and UPS, as independent contractors, could be liable to them for personal injury where they created the hazardous condition and that the trial court erred in concluding that UPS and Cody had no ownership or control over the mat at issue. We disagree.

> When an independent contractor is on the premises, and the owner or occupier has not delivered full possession and complete control of the premises, the owner or occupier of the premises must use ordinary diligence to insure that the property remains safe for invitees to the property. Such duty on the part of the owner or occupier of the premises is a nondelegable duty.

10

(Citation omitted.) *Feggans v. Kroger Co.*, 223 Ga. App. 47, 51 (2) (476 SE2d 822) (1996).

Here, the evidence shows that neither UPS nor Cody owned or controlled the AmericasMart, the security station, or the mat at issue. UPS contracted to provide security for AMC at the AmericasMart, which included positioning security officers at various checkpoints, including the one at which Donna Simmons fell. It is undisputed that post 72 was configured in different ways at different times, and that someone from AMC always determined the configuration. No one from UPS approved the mat, and it was already there when Cody started to work at the AmericasMart in 2003. A corporate representative of UPS stated the mat was part of the checkpoint and "is as much a part of the building as the concrete columns are." Moreover, he stated UPS did not control the mat and it did not place the mat in the location of Donna Simmons's fall. After her fall, someone from AMC removed and preserved the mat.[3] Accordingly, there is no evidence that either Cody or UPS had

---

[3] Donna Simmons stated that after she fell, she saw Officer Cody pick up the mat and reposition it. However, Officer Cody stated she never moved the mat after Donna Simmons fell. Nevertheless, there is no evidence Cody controlled or moved the mat before the fall.

11

ownership or control over the mat at issue, or played a role in the placement of the mat at the time of Donna Simmon's fall.

The Simmons further rely on *J. M. S. Bldg. Maintenance v. Adcock*, 301 Ga. App. 798 (689 SE2d 841) (2009), in arguing that Cody and UPS could be liable to them for personal injury because Cody and UPS created the hazardous condition. However, the Simmons's reliance on *Adcock* is misplaced. In that case, this Court upheld the trial court's denial of the subcontractor's motion for summary judgment where the plaintiff brought claims for injuries suffered as the result of a slip and fall on ice at the bottom of the stairs. Id. at 799-800 (1). There, the evidence showed that ice, which had formed at the bottom of the stairs and created a hazardous condition, was the result of the subcontractor's failure to properly dispose of a bucket of water. These facts are inapposite here where, as previously discussed, there is no evidence that Cody or UPS played a role in the positioning of the mat, let alone having any ownership or control over the mat. As such, there is no evidence that Cody or UPS created the hazard. There is no evidence to show Cody and UPS did anything other than follow the directive of AMC. *Taylor,* 287 Ga. App. at 558 (1).

The Simmons further argue that the distraction doctrine excuses Donna Simmons from using ordinary care for her safety because Officer Cody diverted her

12

attention away from the mat when she asked her to show her badge. However, we do not reach this argument in light of our conclusion in Division 1 that Cody and UPS owed no duty to the Simmons.

3. In their final enumeration of error, the Simmons address whether Donna Simmons exercised the requisite degree of ordinary care when traversing the security checkpoint. The Simmons acknowledge that the defendants did not argue, and the trial court did not find, that Donna Simmons failed to use ordinary care. The Simmons contend, nevertheless, that it would have been erroneous for the trial court to grant summary judgment on such a finding. "[I]t is well settled that appellate courts will not consider new arguments in opposition to a motion for summary judgment raised for the first time on appeal." (Citation and punctuation omitted.) *Sure, Inc. v. Premier Petroleum, Inc.*, 343 Ga. App. 219, 227-228 (2) (807 SE2d 19) (2017). Because this argument was not raised in the trial court, we will not consider it here.

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur*.